Audrey VANVOLKENBURG, Plaintiff,

v.

CONTINENTAL CASUALTY
COMPANY, Defendant.

No. 94–CV–324C(M).

United States District Court,
W.D. New York.

Nov. 8, 1996.

Berkowitz & Pace (Kenneth J. Farrell, of counsel), Buffalo, New York, for Plaintiff.

O'Shea, Reynolds, Napier, Cummings & Kirby (William S. Reynolds, of counsel), Buffalo, New York, for Defendant.

## DECISION and ORDER

CURTIN, District Judge.

### BACKGROUND

Appellant, Continental Casualty Company ("CNA") appeals from a final judgment by United States Magistrate Judge Hugh B. Scott following a bench trial, pursuant to the parties' voluntary consent to waive their rights to proceed before a District Court Judge and election to take any appeals to a District Judge in accordance with 28 U.S.C. § 636(c) (R 53–54).

After discovering a lump in her left breast, appellee Audrey VanVolkenburg visited her primary physician, Dr. Ruh, on January 16, 1991, regarding the lump. Dr. Ruh examined the breast, palpated and measured the lump, and sent appellee for a mammogram, which was conducted on January 18, 1991. On January 23, 1991, Dr. Ruh informed appellee that the mammogram was negative,

diagnosed the lump as "just a cyst," and explained that she should return if she had any problems with the lump. During this visit, Dr. Ruh did not mention the possibility of cancer (R 68).

On March 14, 1991, appellee underwent a pre-employment physical in the health office of her future employer, Our Lady of Victory Hospital ("OLV"). During this examination, appellee informed the doctor of the existence of the lump and explained that she was going to have it removed. This doctor did not examine appellee's breast (R 75–76). CNA does not contend that appellee hid the existence of the lump from OLV in any way (R 247).

On March 22, 1991, appellee returned to Dr. Ruh because the lump had increased in size and become painful. After palpating the lump, Dr. Ruh referred appellee to Dr. Apen, a surgeon. Once again, Dr. Ruh did not mention the possibility of cancer (R 69).

On March 28, 1991, appellee went to see Dr. Apen. He examined the lump, reviewed the results of the mammogram ordered by Dr. Ruh, and concluded that the lump was a cyst. Appellee requested that Dr. Apen remove the cyst since it was so painful, and he agreed to conduct the outpatient procedure on April 5, 1991 (R 70). Dr. Apen did not discuss the possibility of cancer with appellee, and his examination notes from this first visit describe the lump as "nothing suspicious" (R 112).

On April 1, 1991, appellee commenced her employment at OLV. Part of appellee's benefits package was a long-term disability policy serviced by appellant which became effective on her commencement date (R 19). This policy is covered by ERISA, 29 U.S.C. § 1001 et seq.

Dr. Apen removed the cyst on April 5, 1991. During the procedure, the doctor noted that the cyst was larger than he had expected; nevertheless, he still did not consider the possibility that the lump could be cancerous. Consistent with his belief prior to the surgery, Dr. Apen's postoperative diagnosis was that the mass was a cyst (R 105–06).

On April 9, 1991, Dr. Apen informed appellee that according to a biopsy of the lump it was cancerous. Appellee testified that Dr. Apen appeared surprised at the biopsy results since appellee had not presented with the symptoms of cancer and since it is unusual for a woman her age to develop this problem (R 72). Dr. Apen testified that appellee was not treated for cancer until after it was diagnosed on April 9 (R 116). On cross-examination, he agreed that appellee probably had breast cancer for three and one-half years prior to April 1, 1991, but he noted that this does not mean that appellee's pre-April 9 treatments were for cancer (R 123–125).

Appellee subsequently underwent chemotherapy treatments, a bone marrow transplant, radiation treatments, a modified radical mastectomy of her left breast, and surgery on her neck to excise metastatic cancer which had spread to her lymph nodes. Appellee was disabled from work on April 16, 1991, and remained disabled for 64 weeks (R 56). Dr. Apen testified that the spread of the cancer to appellee's lymph system was the cause of the disability which prevented her from returning to work. On cross-examination, Dr. Apen refused to agree that appellee had lymphatic cancer prior to April 1, 1991, and stated that it is not possible to determine the life of the cancer from the pathology reports (R 126–27).

Appellee applied for disability benefits under the long-term policy at issue and was denied on December 11, 1991. She requested review of this decision on two separate occasions during 1992, and both times appellant affirmed its denial. On October 22, 1992, appellee instituted an appeal with the Appeals Committee of CNA Insurance Companies; and on November 20, 1992, the committee upheld the previous decision to deny benefits on the grounds that appellee's condition was pre-existing under the terms of the policy (R 3).

In the underlying action, appellee claimed that appellant wrongfully denied her claim for long-term disability benefits by characterizing her cancer as a "pre-existing condition." Following a bench trial held on July 7 and 8, 1995, Magistrate Judge Scott found

the definition of a "pre-existing condition" to be ambiguous and concluded that since neither Dr. Ruh nor Dr. Apen advised or treated appellee for a cancerous condition or even considered the possibility that the lump in appellee's breast was cancerous prior to April 1, 1991, appellee did not receive medical treatment or advice for a pre-existing condition which caused appellee's disability (R 264).

Appellant appeals Magistrate Judge Scott's judgment arguing that the "pre-existing condition" language of the policy is not ambiguous and that treatment of a condition not yet diagnosed which later turns out to be cancer satisfies the natural meaning of "pre-existing condition."

### DISCUSSION

#### I. Standard of Review of CNA's Denial of Benefits

The language of the insurance policy at issue determines whether the court must apply the arbitrary and capricious standard of review to CNA's determination that appellee's condition was pre-existing or whether the court must review the determination *de novo*. The governing statute, ERISA, does not specifically address the appropriate standard of review of benefits decisions by insurance providers. In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989), the Supreme Court held that "a denial of benefits challenged under [ERISA] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." The Second Circuit has more recently applied this holding in *Jordan v. Retirement Committee of Rensselaer Polytechnic Institute*, 46 F.3d 1264 (2d Cir.1995), and *Masella v. Blue Cross & Blue Shield of Conn.*, 936 F.2d 98 (2d Cir.1991).

Upon review of the language of the CNA policy, Magistrate Judge Scott determined that the policy does not reserve discretion for the policy administrator. Consequently, he concluded that under *Bruch*, the court was required to conduct a *de novo* review of CNA's determination.

At the start of the trial, the parties agreed that the standard to be applied was "arbitrary and capricious" (R 64–65). In its brief, appellant argued that this stipulation directly affected its trial strategy. Specifically, appellant contended that had there not been such a stipulation, the defense would have called a representative of the insurance company to testify about its application of the pre-existing condition clause to the appellee's benefits claim. At trial, the defense only called one witness, a doctor with a specialty in oncology, whose testimony did not relate to the interpretation of the policy.

In his opinion, Magistrate Judge Scott concluded that the case law controlled this decision despite the parties' stipulation regarding standard of review.

Appellee argues that Magistrate Judge Scott properly interpreted the language of the policy in determining that the plan administrator does not have any discretion to interpret or construe the terms of the policy and that he properly concluded that the court was required to conduct *de novo* review of CNA's determination. At oral argument, appellee noted that the agreement at the beginning of the trial was not a formal stipulation, but rather an opportunity for the parties to explain their position on the appropriate standard of review. In addition, appellee indicated that at the pre-trial meeting at which the parties discussed who their witnesses would be, appellant announced that it intended to call only one witness, an expert in oncology. Thus, even prior to the stipulation on standard of review, appellant had decided not to call a representative of the insurance company.

Appellant does not challenge either Magistrate Judge Scott's interpretation of case precedent or his conclusion that the policy does not provide for discretion on the part of the policy administrator. In its brief, appellant argued that the court must apply arbitrary and capricious review where the parties have so stipulated at the beginning of trial and that had it known that the court would apply a less deferential standard it would have called additional witnesses. At oral argument, the court questioned counsel as to

whether appellant wanted the case remanded to allow for the testimony of a representative of the company. Appellant indicated that it did not want a remand and that the decision should be reversed even under the more rigorous standard of review.

Although the controlling case law does not address whether parties may stipulate to a weaker standard of review in ERISA benefits cases, Magistrate Judge Scott's conclusion that this policy required *de novo* review is correct. In *Bruch,* the Supreme Court emphasized that such review is necessary to effectuate the primary purposes of ERISA; promoting "the interests of employees and their beneficiaries in employee benefits plans," and protecting "contractually defined benefits." 489 U.S. at 113–14 (citations omitted). *See generally* 29 U.S.C. § 1001 (setting forth congressional findings and declarations of policy regarding ERISA). Allowing parties to alter the standard of review circumvents these important purposes.

In addition, the plan provisions do not resemble the typical provisions cited in post-*Bruch* appellate decisions as the basis for a more deferential review. *See, e.g., Jones v. Laborers Health & Welfare Trust Fund,* 906 F.2d 480, 481 (9th Cir.1990) (plan gave the administrators the power "to construe the provisions of ... the Plan" and provided that any construction adopted by the administrators in good faith would be binding); *Batchelor v. International Brotherhood of Electrical Workers Local 861 Pension & Retirement Fund,* 877 F.2d 441, 443 (5th Cir. 1989) (plan gave administrator "full power to construe the provisions of this Agreement" as well as the authority to "interpret the Plan").

As for the parties' stipulation, in *Sinicropi v. Milone,* 915 F.2d 66 (2d Cir.1990), the Second Circuit noted that a court is not bound to accept a stipulation regarding a question of law (citing *Estate of Sanford v. Commissioner of Internal Revenue,* 308 U.S. 39, 51, 60 S.Ct. 51, 59, 84 L.Ed. 20 (1939).). Thus, Magistrate Judge Scott could have rejected the parties' stipulation at the start of trial. Since appellant had decided not to call any company representatives prior to the stipulation and since appellant argues that the magistrate judge's decision should be reversed regardless of the standard of review, this court finds that Magistrate Judge Scott properly applied *de novo* review and that there is no reason to remand the case to allow appellant to present additional proof.

## II. Interpretation of the Contract

### A. *The Language of the Policy is Ambiguous*

The language of ERISA does not provide the courts with guidance as to how group insurance and disability plans are to be interpreted. The federal courts have developed a federal common law to help guide such interpretation adopting canons of contract interpretation from state law. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Burnham v. Guardian Life Ins. Co. of America,* 873 F.2d 486 (1st Cir.1989); *Hughes v. Boston Mutual Life Ins. Co.,* 26 F.3d 264 (1st Cir.1994). Thus, the courts have applied the basic rules that "straightforward language in an ERISA-regulated insurance policy should be given its natural meaning," *Burnham,* 873 F.2d at 489; *Hughes,* 26 F.3d at 268, and that "ambiguous terms should be strictly construed against the insurer." *Masella v. Blue Cross & Blue Shield of Conn.,* 936 F.2d 98, 107 (2d Cir. 1991); *Lee v. Blue Cross/Blue Shield,* 10 F.3d 1547, 1551 (11th Cir.1994); *Hughes,* 26 F.3d at 268.

With this framework in mind, Magistrate Judge Scott reviewed the policy's definition of a pre-existing condition and found that the term "condition" as used within the definition is capable of reasonable alternative interpretations. Under the policy, preexisting condition is defined as a "condition for which medical treatment or advice was rendered, prescribed or recommended within 3 months prior to [the insured's] effective date of insurance" (R 37). The policy does not define the term "condition."

Appellant argues that the judge erred in finding the ambiguity. It argues that the plain meaning of "condition" is a defective state of health, a disease, or an ailment. Appellant contends that the use of the word condition contains no implication of diagnosis,

noting that the term is commonly used to refer to medical problems of one part of the body of unspecified diagnosis (e.g., a heart condition or a liver condition). Appellant maintains that the court strained to find an ambiguity where the words have definite and precise meanings. In support of its position, appellant relies on *Bullwinkel v. New England Mutual Life Ins. Co.*, 18 F.3d 429 (7th Cir.1994), in which the court held that treatment of a malignant breast lump prior to the effective date of the insurance policy at issue triggered the policy's preexisting condition exclusion even though the lump was not definitively diagnosed as cancer until later.

Appellee contends that the entire phrase "pre-existing condition" as defined in the policy is ambiguous. She argues that in order for there to be a pre-existing condition there must be some awareness on the part of either the physician of the insured or the insured herself of the condition that eventually causes the disability. Appellee relies on *Hughes*, 26 F.3d at 264, in which the First Circuit interpreted a "preexisting condition" exclusion in a policy held by an individual who had received medical attention for various symptoms consistent with multiple sclerosis. The appellee in *Hughes* was not diagnosed as having multiple sclerosis until after the effective date of the policy. The *Hughes* court adopted an interpretation of the ambiguous preexisting condition exclusion that required awareness of the condition. Further, the court instructed that "a physician's awareness of the sickness would probably require at least a tentative diagnosis; however, it may be that no diagnosis would be necessary if the insured was already aware of the condition." *Hughes*, 26 F.3d at 270, n. 5.

Given that the parties offer reasonable alternative interpretations and support each interpretation with persuasive case law, Magistrate Judge Scott was correct to find the language of the policy ambiguous. Appellant's suggestion that the court has conjured up ambiguities is unpersuasive given that other courts have found similar language ambiguous. In addition to citing the *Hughes* and *Bullwinkel* cases, Magistrate Judge Scott distinguished the present case from the First Circuit's holding in *Golden*

*Rule Insurance Co. v. Atallah*, 45 F.3d 512 (1st Cir.1995). In *Golden Rule*, the insured suffered from a brain tumor which was not diagnosed until after the effective date of her insurance policy. The preexisting condition provision of that policy specifically excluded conditions for which medical advice or treatment was obtained within 60 months prior to the effective date of the policy, or "[w]hich in the opinion of a qualified doctor, (a) probably began prior to the Effective Date ...; and (b) manifested symptoms which would cause an ordinarily prudent person to seek diagnosis or treatment within the 60 months immediately preceding the Effective Date." *Golden Rule*, 45 F.3d at 515. The court in *Golden Rule* expressly noted that the existence of this "symptoms clause" distinguished the case from *Hughes*, *id.*, at 517, n. 6, and found that the language of the policy was not ambiguous. *Id.* at 518. Magistrate Judge Scott concluded that this language is an example of how such a provision could have been drafted to eliminate any ambiguities.

### B. *Application of the Adopted Interpretation to the Facts*

After finding the policy ambiguous, Magistrate Judge Scott followed the rule of construction that "ambiguous terms should be strictly construed against the insurer," *Masella*, 936 F.2d at 107; *Lee*, 10 F.3d at 1551; *Hughes*, 26 F.3d at 268, and adopted appellee's interpretation of the phrase "pre-existing condition." Citing *Hughes* extensively, the court found that "[i]nasmuch as the policy language does not exclude all conditions which were, in fact, pre-existing, but only excludes those for which treatment or advice were obtained within the designated period prior to the effective date, ... plaintiff could not have received treatment or advice *'for'* a condition unless some awareness of the actual condition existed" (emphasis in the original) (R 262).

Turning to the facts of the case, Magistrate Judge Scott found that neither of appellee's physicians advised or treated her for a cancerous condition or even seriously considered the possibility that the appellee's breast lump was cancerous prior to the effective

date of her disability policy. Thus, the court found that appellee did not receive medical treatment for a preexisting condition which caused the appellee's disability (R 264).

On appeal, appellant argues that the term "condition" should be given the broader interpretation accepted by the Seventh Circuit in *Bullwinkel,* 18 F.3d at 429, which includes the treatment of any symptoms of the disease that caused the disability whether or not the disease was diagnosed at the time the symptom was treated.

In the alternative, in its brief appellant argues that even under Magistrate Judge Scott's interpretation of the policy appellee had a pre-existing condition. First, appellant contends that appellee believed that she had cancer when she consulted her primary physician each time. In support of this argument, appellant notes that appellee has filed a separate negligence action against Dr. Ruh (R 85–96). Second, appellant maintains that the course of treatment followed by both appellee's primary physician and her surgeon demonstrate that they were both concerned with cancer and were rendering advice and recommending treatment for a potentially cancerous condition. Specifically, appellant focuses on the decision to remove the lump in spite of the non-cancerous diagnosis and the surgeon's admission that had he believed the lump to be malignant he would have done the same procedure (R 109).

Appellee argues that Magistrate Judge Scott correctly applied an interpretation of the policy that requires awareness of the condition that eventually causes the disability and emphasizes the fact that the record demonstrates that neither of her physicians diagnosed, tentatively diagnosed, or even considered cancer as a possible diagnosis of her breast lump. She notes that appellant's expert witness acknowledged that an excisional biopsy is not exclusively reserved for cancerous conditions (R 176).

 Appeals to a District Court by consent of the parties are taken in the same manner as appeals from the District Court to the Court of Appeals. 28 U.S.C. § 636(c)(4). Consequently, any statute or federal rule dealing with appeals from the District Courts to the Courts of Appeals are applicable in this case. Thus, in reviewing the Magistrate Judge's factual findings, this court must not set aside his decisions unless they are clearly erroneous, giving due regard to the opportunity of the trial court to judge the credibility of the witnesses. Fed.R.Civ.P. 52(a). In *Concrete Pipe & Products of California, Inc. v. Construction Laborers Pension Trust for Southern California,* 508 U.S. 602, 623, 113 S.Ct. 2264, 2280, 124 L.Ed.2d 539 (1993), the Supreme Court instructed that "review under the 'clearly erroneous' standard is significantly deferential, requiring a 'definite and firm conviction that a mistake has been committed.' "

Given the case precedent and the testimony presented at trial, Magistrate Judge Scott's interpretation of the language of the policy and his application of this interpretation to the facts are not clearly erroneous, particularly in light of the First Circuit's decisions in *Hughes.* Appellant's argument that *Hughes* is not instructive because multiple sclerosis is a distinctively evasive disease to diagnose and because the definition of pre-existing condition in the policy in question did not include the word "condition" are not persuasive. The evidence does not demonstrate that either the physicians or appellee were "aware" that she was suffering from cancer prior to April 9, 1991. The fact that the appellee is suing Dr. Ruh for malpractice does not affect this determination.

Although some of the factual circumstances of the *Bullwinkel* case are similar to the present case (e.g., both appellees are women who discovered a breast lump, each visited a physician to examine the lump, each underwent diagnostic tests which did not reveal cancer, each received preliminary diagnosis of the lump as a cyst, each decided to have the lump removed even though the lump was believed to be benign, each had an intervening effective date of a new insurance policy, each had her lump removed, each learned the lump was cancerous following tissue evaluation of the removed lump, and each underwent additional cancer treatment), Magistrate Judge Scott effectively distinguished the *Bullwinkel* case from the present case. First, he noted that although the doctors treating the appellee in *Bullwinkel*

**204**

did not definitively diagnose the condition as cancer prior to the effective date of the policy, they suspected that the lump was cancerous, discussed this possibility with the appellee, and recommended procedures to confirm its status. The discovery that the lump was in fact cancerous did not come as a surprise to these physicians. In the present case, appellee never discussed the possibility of cancer with either her primary physician or the surgeon, and the physicians were genuinely surprised by the discovery.

Second, Magistrate Judge Scott noted that the *Bullwinkel* court placed explicit limitations on the precedential value of its holding, based on the fact that the appellee's attorney "rested his entire appeal on the argument that a court may not infer that a lump discovered to be cancerous in one month was also cancerous two months before." *Bullwinkel,* 18 F.3d at 433. The court cautioned that it was "mak[ing] no statement about what might happen if an attorney in a future case presents different arguments and authority to the court." *Id.* Appellee's arguments in this case are more varied and complex.

Magistrate Judge Scott's factual findings are also not clearly erroneous. At trial, the parties did not dispute that (1) the January 18, 1991, mammogram was negative for malignancy; (2) both treating physicians thought that appellee had a non-cancerous cyst on March 28, 1991, and did not discuss or seriously consider the possibility of cancer until after the pathology report on the excised tissue had been released; and (3) prior to the tissue examination there were no other indications that the breast lump was malignant. The appellant failed to offer any testimony that the doctors considered cancer during the probationary period or any testimony regarding how its administrators reached its decision rejecting appellee's claim for disability payments.

### *CONCLUSION*

The Magistrate Judge applied the correct standard of review and properly interpreted the policy finding ambiguity and offering a reasonable definition of the clause "pre-existing condition" to resolve this ambiguity. For the reasons stated above, this court affirms Magistrate Judge Scott's decision. This file is remanded to the Magistrate Judge to compute the amount of the award and for the entry of judgment.

So ordered.