Thomas CAVALLO, Plaintiff,

v.

UTICA-WATERTOWN HEALTH INSUR-ANCE COMPANY, INC., f/k/a Blue Cross and Blue Shield of Utica–Watertown, Inc., Defendant.

No. 96–CV–933.

United States District Court,
N.D. New York.

Nov. 10, 1997.

Getnick Livingston Atkinson Gigliotti & Priore, LLP (Louis P. Gigliotti, of counsel), Utica, NY, Dyer Donnelly (F. James Donnelly, of counsel), Denver, CO, Hagens & Berman (Steve W. Berman, Clifford A. Cantor, of counsel), Seattle, WA, for Plaintiff.

Hinman, Straub, Pigors & Manning, P.C. (Beverly Cohen, of counsel), Albany, NY, for Defendant.

## MEMORANDUM-DECISION and ORDER

HURD, United States Magistrate Judge.

## I. INTRODUCTION

Plaintiff brings this action pursuant to the Employee Retirement Income Security Act, as amended ("ERISA"), 29 U.S.C. §§ 1001–1461, seeking declaratory, injunctive, and compensatory relief as well as an accounting, formation of a constructive trust, and reimbursement for attorneys fees and costs. The plaintiff brought this action on his own behalf and on behalf of all others similarly situated. However, no application for class certification has been made.

Plaintiff alleges that defendant breached the contract under which defendant provides health care benefits to plaintiff, and breached its fiduciary duty as administrator of the plan. In essence, plaintiff's allegations stem from defendant calculating its coinsurance liability by applying its percentage to one amount, while calculating plaintiff's coinsurance liability by applying his percentage to a different amount, resulting in the defendant's coinsurance liability being less than the percentage for which the parties contracted. Plaintiff alleges that as a result, plan documents misled participants as to benefits, participants made overpayments, and defendant misappropriated amounts relating to lifetime or procedure maximums. Defendant concedes that the two coinsurance percentages are applied to different amounts to determine each party's liability,[1] but insists that doing so is required by New York State law. Currently before the court are cross-motions for summary judgment. Oral arguments were heard on July 10, 1997, in Utica, New York. Decision was reserved.

## II. BACKGROUND

Plaintiff Thomas Cavallo secured health insurance coverage, through his employer, with defendant Utica–Watertown Health Insurance Company, Inc., f/k/a Blue Cross and Blue Shield of Utica–Watertown, Inc. ("Blue Cross" or "defendant"). Plaintiff's health insurance plan (the "Plan") is governed by a Comprehensive Contract Form CMMC/92 ($100) ("Contract"), (Deetz Aff. Ex. C.), and is regulated by ERISA. Blue Cross obtained approval of the Contract from the New York State Insurance Department, as required by N.Y. Ins. Law § 3102.

When a Plan participant, such as plaintiff, is hospitalized, the hospital bills Blue Cross directly. Blue Cross then determines the applicable deductible, calculates both its and

---

1. Plaintiff's complaint addresses both inpatient and outpatient health care services. Plaintiff has abandoned his claims regarding outpatient services. Thus, only benefits for inpatient services are addressed.

the participant's coinsurance liability, determines whether the participant has met the coinsurance ceiling, and notifies the participant of the amount the participant must pay to the hospital. This notification takes place via an Explanation of Benefits form ("EOB"). (*See, e.g.,* Deetz Aff. Ex. D.) The EOB contains, *inter alia,* a "Procedure Code," "Total Charges," "Allowed Charges," "Deductible," "Coinsurance," "Amount Paid," and "Subscriber's Responsibility" for each procedure. *See id.* The reverse side of the EOB contains the required ERISA message:

> If this summary of benefits indicates that your claim has been denied in whole or in part and you feel it is not justified, you have a right to a review of the decision. To begin the claim denial review process, you must file a written appeal within 60 days after receiving this notice. You should include reasons why you do not agree with the Plan's decision and any additional information pertinent to the claim.

*See id.* Ex. G. Under the Plan, Blue Cross's coinsurance is 80%, while plaintiff's coinsurance is 20%. Plaintiff's annual coinsurance ceiling is $400, and his deductible is $100.

Additionally, plaintiff's liability under the plan for hospitalizations at a member hospital is limited to the deductible and coinsurance. The Plan provides that for hospitalizations at a nonmember hospital, Blue Cross will pay less than it would pay to a member hospital, except in emergency admissions. For hospitalizations at a nonmember hospital, plaintiff will be liable for any amount not paid by Blue Cross, in addition to deductible and coinsurance. The Contract contains numerous other provisions which are irrelevant to this case.

Plaintiff was hospitalized at St. Lukes Memorial Hospital ("St.Lukes"), in Utica, New York, from April 6 to 8, 1994. St. Lukes is a Blue Cross participating provider and member hospital. St. Lukes billed $4,101.54 for this hospitalization. Blue Cross calculated

plaintiff's coinsurance at $341.00, the amount remaining of his $400.00 maximum coinsurance, based upon the $4,101.54 billed amount. His deductible had already been met. Blue Cross calculated its coinsurance based upon $3708.78, the Diagnosis Related Groups case-based rate of payment per discharge ("DRG Rate").[2] Blue Cross paid 80% of the DRG Rate corresponding to plaintiff's coinsurance amount, and 100% of the remaining DRG Rate. (*See* Pl.'s Not. Mot. Ex. B ¶ 8–11 (detailing calculations performed).) Accordingly, Blue Cross paid St. Lukes $3,397.24.

Plaintiff moves for summary judgment arguing that as no material facts are in dispute, he is entitled to judgment as a matter of law. He therefore seeks a finding that the defendant failed to follow the terms of the Contract. In opposition, Blue Cross argues that plaintiff is not entitled to summary judgment because the Contract "carves out" terms for inpatient hospitalizations in accordance with New York law. Plaintiff replies that if New York law has requirements contrary to ERISA, then the New York law is preempted by ERISA.

Defendant moves for summary judgment on three bases. First, plaintiff fails to make a prima facie case because no damages have been alleged. Second, plaintiff has failed to exhaust administrative remedies as required by ERISA. Third, plaintiff's action is time barred by the two-year limitation set by the Contract. These three threshold issues will be analyzed, followed by an analysis of the interrelated ERISA/state law/contract questions.

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505,

---

**2.** The DRG Rate for a particular hospital is set pursuant to New York Public Health Law

§ 2807–c, which will be discussed in detail *infra.*

2509–10, 91 L.Ed.2d 202 (1986). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Project Release v. Prevost*, 722 F.2d 960, 968 (2d Cir.1983). Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56; *Liberty Lobby, Inc.*, 477 U.S. at 250, 106 S.Ct. at 2511; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. at 1356. At that point the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S.Ct. at 1356. To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. *Liberty Lobby, Inc.*, 477 U.S. at 248–49, 106 S.Ct. at 2510–11; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. at 1356.

## B. Prima Facie Case—Damages

Defendant argues that the action must be dismissed due to plaintiff's failure to set forth any evidence of damages. It is undisputed that while defendant's coinsurance was based upon the DRG Rate of $3,708.78, plaintiff's coinsurance was based upon the amount billed by St. Lukes, $4,101.54. It is also undisputed that at the time the St. Lukes charges were incurred, plaintiff had previously paid $59.00 in coinsurance, leaving only $341.00 before meeting his $400.00 maximum for that year. Plaintiff's coinsurance as against the full billed amount would be $820.31.[3] Plaintiff's coinsurance based upon the DRG Rate would have been only $741.76.[4] These calculations indicate that coinsurance calculated based upon the total amount would result in plaintiff overpaying the hospital by $78.55.[5] Defendant argues that since plaintiff actually only paid $341.00, plaintiff suffered no monetary damages.

Defendant also points out that even if there were damages, the damages would only amount to $29.46. Defendant calculated this figure by comparing 20% of the portion of the total bill to which coinsurance was applicable, $1722.65, to 20% of the same portion of the DRG Rate, $1557.54. The logic of these calculations is not immediately apparent. However, a determination of whether or not plaintiff has suffered actual damages is not necessary.

■ Clearly in order to recover compensatory damages plaintiff must prove that he suffered such damages. However, lack of such damages is not fatal to his claim. In addition to seeking restitution for overpayments, plaintiff seeks declaratory, injunctive and other equitable relief. Accordingly, summary judgment for the defendant on this ground is inappropriate.

## C. Exhaustion of Administrative Remedies

■ ERISA requires that every benefit plan provide notice in writing of any denial of a claim and the reasons for such denial. 29 U.S.C. § 1133. Further, the plan must provide for a reasonable opportunity for review of the denial. *Id.;* 29 C.F.R. § 2560.503–1(e)–(h). Exhaustion of the administrative appeal process set forth by the ERISA plan is a prerequisite to judicial review. *Kennedy v. Empire Blue Cross & Blue Shield,* 989 F.2d 588, 594 (2d Cir.1993).

The EOB provided by Blue Cross to plaintiff plainly states that an appeal from a denial of benefits must be submitted in writing within 60 days. Blue Cross argues that plaintiff failed to submit an appeal within 60 days, and therefore he is precluded from this suit. This argument must fail.

---

**3.** Twenty percent (20%) of $4,101.54, the billed amount, equals $820.31.

**4.** Twenty percent (20%) of $3,708.78, the DRG Rate, equals $741.76.

**5.** $820.31 minus $741.76 equals $78.55.

The issues in the instant case pertain to breach of fiduciary duty in administration of the ERISA plan. There is no claim that Blue Cross wrongfully denied a benefit. There is no notice by Blue Cross to plaintiff denying a claim, as required by ERISA, 29 U.S.C. § 1133. Accordingly, the appeal process set forth on the EOB is inapplicable in this case.

### D. Statute of Limitations

■ The Contract provides that legal action against Blue Cross regarding denial of a claim must be brought within two years after the claim is rejected in writing. (Deetz Aft. Ex. A at 77.[6]) Defendant argues that this limitation time-bars this suit. However, the plain language of the section is clear: legal action pertaining to a claim denial must be brought within two years. Again, plaintiff does not claim that benefits were denied and this lawsuit is unrelated to denial of benefits. Thus, the two-year contractual limitations period is inapplicable to this action. Rather, the appropriate statute of limitations is six years. *See Miles v. New York State Teamsters Conf. Pension & Retirement Fund Employee Pension Benefit Plan,* 698 F.2d 593, 598 (2d Cir.), *cert. denied,* 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983); 29 U.S.C. § 1113.

### E. ERISA Claim

#### 1. *Introduction*

A primary goal of ERISA is to protect the participants in employee benefit plans. *See* 29 U.S.C. § 1001(b). This goal is effectuated, in part, by requiring plans to inform participants regarding their plans, by establishing obligations of fiduciary duties upon plan administrators, and by providing appropriate remedies should plan administrators fail to meet ERISA's requirements. *See id.; see also New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 651, 115 S.Ct. 1671, 1674, 131 L.Ed.2d 695 (1995)(explaining the ways in which ERISA protects plan participants).

Each plan must be established and administered pursuant to a written document. 29 U.S.C. § 1102(a)(1). The fiduciary of the plan must discharge its duties exclusively for the benefit of participants and their beneficiaries, and in accordance with the plan's governing documents. *Id.* § 1104(a)(1). A fiduciary may not participate in any transaction regarding the plan on behalf of a party with interests adverse to the plan. *Id.* § 1106(b). A fiduciary is liable to the plan for any loss resulting from a breach, and is "subject to such other equitable or remedial relief as the court may deem appropriate." *Id.* § 1109(a).

ERISA further provides for civil enforcement by a participant, permitting a participant to bring a civil action to recover benefits due under plan terms, to enforce rights under plan terms, or to clarify rights to future benefits under the plan terms. *Id.* § 1132(a)(1). Participants may also bring a civil action to enjoin violations of ERISA or the plan terms, or for other equitable relief to redress ERISA violations or to enforce ERISA provisions and plan terms. *Id.* § 1132(a)(3). A party to such civil action may be awarded reasonable attorney's fees and costs, in the court's discretion. *Id.* § 1132(g)(1).

Plaintiff seeks a declaration that the Contract required Blue Cross to pay specified percentages of providers' charges and that Blue Cross owes plaintiff and similarly situated Plan participants a fiduciary duty and it breached that duty. Plaintiff requests an injunction requiring Blue Cross to pay benefits as specified in the Contract, to maintain Blue Cross's payment percentage as specified in the Contract, to disgorge to the Plan or to participants as appropriate any amounts resulting from breaches of fiduciary duties, and to render an accounting of all amounts paid to providers based upon anything other than the percentages specified in the Plan. Thus, the issue to be determined is whether Blue Cross failed to administer the Plan in accordance with its terms, thereby

---

**6.** "You can only bring legal action against us within 2 years from the date we reject the claim in writing." *Id.*

breaching its fiduciary duties and violating ERISA.

■ Interpretation of contract language and determination of whether the contract is ambiguous is a question of law for the court. *See Walsh v. Schlecht*, 429 U.S. 401, 407–08, 97 S.Ct. 679, 684–85, 50 L.Ed.2d 641 (1977); *Schiavone v. Pearce*, 79 F.3d 248, 252 (2d Cir.1996); *Swaback v. American Info. Techs. Corp.*, 103 F.3d 535, 540 (7th Cir.1996); *Masella v. Blue Cross & Blue Shield*, 936 F.2d 98, 107 (2d Cir.1991); *VanVolkenburg v. Continental Cas. Co.*, 944 F.Supp. 198, 201 (W.D.N.Y.1996). ERISA plan contracts are interpreted following federal common law, which has adopted state law canons of contract interpretation. *Swaback*, 103 F.3d at 540; *Masella*, 936 F.2d at 107; *VanVolkenburg*, 944 F.Supp. at 201; *see also Schiavone*, 79 F.3d at 252 (contract interpretation in CERCLA case). ERISA plan language should be given its natural, ordinary meaning as would be understood by an average person. *Swaback*, 103 F.3d at 541; *VanVolkenburg*, 944 F.Supp. at 201.

Additionally, where an ERISA plan provides that the plan administrator has discretion to interpret the contract and to construe its terms, the administrator's interpretation and construction is reviewed under an arbitrary or capricious standard. *Jordan v. Retirement Comm. of Rensselaer Polytechnic Inst.*, 46 F.3d 1264, 1271 (2d Cir.1995); *Masella*, 936 F.2d 98, 102–03 (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989)). The administrator's interpretation is upheld if the administrator considered relevant factors and did not make a clear error of judgment. *Jordan*, 46 F.3d at 1271.

■ The Contract provides that the administrator has

the authority and discretion to interpret this contract and to construe any uncertain or disputed term or provision, including, but not limited to determining whether an individual is eligible for benefits and, if so, the amount of benefits available.

(Deetz Aff. Ex. C at 76.) This paragraph makes clear that Blue Cross has discretion in interpreting the Contract and construing its terms.

The Contract provides the following definition of coinsurance:

**Coinsurance Defined.** After you have met the deductible under this contract for the calendar year, we will pay 80% of the next $2,000 of Allowed Amounts incurred for covered services. You are responsible for the remaining 20% of the Allowed Amount that we do not pay. This is called your coinsurance. We only credit toward your coinsurance our Allowed Amount for the covered service.

(Deetz Aff. Ex. C at 18.) Thus, the participant's coinsurance is defined as 20% of the Allowed Amount, while Blue Cross's coinsurance is 80% of the Allowed Amount. Plaintiff contends that this definition is unambiguous—both the participant's and Blue Cross's coinsurance are determined by applying the appropriate percentage to the same amount, the Allowed Amount. Plaintiff argues, therefore, since Blue Cross calculated coinsurance by applying the appropriate percentages to two different amounts, Blue Cross failed to follow the Contract terms and breached its fiduciary duties, entitling plaintiff to summary judgment.

On the other hand, Blue Cross points out the Contract definition of "Allowed Amount" which specifically exempts hospital services from that definition. The contract defines Allowed Amount as follows:

With the exception of inpatient hospital care and inpatient psychiatric hospital care, every service we cover is assigned an amount, which is set forth in our payment policy. When you receive a covered service, we will pay the amount listed in our payment policy or your provider's charge, whichever is less, for the service you receive. When we use the term "Allowed Amount" in this contract, it means the amount set forth in our payment policy or your provider's charge, whichever is less. Our payment policy may change from time to time. If you want information about our payment policy or Allowed Amounts, you should call or write the Claim Service Department at our office in Utica, New York.

*Id.* at 16. Blue Cross argues that this definition provides a "carve out" for hospital services, because New York state law sets forth the methodology for calculating payments to hospitals. Blue Cross states that the entire contract is consistent and clear—coinsurance for professional/medical services is based upon the Allowed Amount set by Blue Cross, while coinsurance for inpatient hospital services is not based upon the Allowed Amount. Blue Cross contends that it did not breach the contract, and that it is therefore entitled to summary judgment.

Blue Cross suggests that any other reading of the contract would constitute judicial variation of the written words of the contract. Further, Blue Cross contends that to construe the contract as requiring the coinsurance to be based upon an Allowed Amount would result in an illegal contract. In response, plaintiff contends that ERISA preempts state law.[7] An examination of the applicable New York statute guides the analysis.

### 2. *New York Public Health Law § 2807-c*

New York has a Prospective Hospital Reimbursement Methodology under which reimbursement rates for hospital services are determined. *See* N.Y. Pub. Health Law § 2807-c.[8] Section 2807-c sets rates for hospital inpatient care based upon the category into which the patient's insurer falls[9] *See also Travelers,* 514 U.S. at 650, 115 S.Ct. at 1674; Brief for Petitioners Mario M. Cuomo, et al., *Travelers,* 1994 WL 646144, at *4 (hereinafter *"Cuomo Brief"*).

Diagnosis Related Groups (DRG's) are the classifications used by the federal government to reimburse hospitals for services provided to patients covered by Medicare. *See* N.Y. Comp.Codes R. & Regs. tit. 10, § 86-1.50(a)(1996). There are 794 DRG's into which a patient may be classified based upon the patient's medical problem. *Travelers,* 514 U.S. at 650, 115 S.Ct. at 1674; *Cuomo Brief* at *4. The case based payment per discharge for each diagnosis related group, or DRG Rate, for a particular hospital is calculated based upon a combination of operating cost, capital cost, bad debt and charity care costs, inflation trend factor, malpractice costs, and in some instances a financially distressed hospital component. N.Y. Pub. Health Law § 2807-c(1)(a); *Travelers,* 514 U.S. at 650, 115 S.Ct. at 1674; *Cuomo Brief* at *4.

Medicaid, non-profit organizations and health maintenance organizations reimburse hospitals for inpatient services provided to their insureds at the straight DRG Rate. § 2807-c(1)(a).[10] Blue Cross falls into this

---

**7.** As will be seen, the preemption issue need not be decided in order to dispose of the present motions, because the preemption question arises only if the contract is interpreted in such a manner as to render it illegal. It is notable, however, that the United States Supreme Court has determined that the rate-setting methodology using surcharges provided for in § 2807-c is not preempted by ERISA. *See Travelers,* 514 U.S. at 649, 115 S.Ct. at 1674 (holding that "the provisions for surcharges do not 'relate to' employee benefit plans within the meaning of ERISA's preemption provision, § 514(a), 29 U.S.C. § 1144(a), and accordingly suffer no pre-emption").

**8.** As of January 1, 1997, the methodology has changed, permitting negotiation of rates by organizations such as Blue Cross. All references to § 2807-c reflect the law as it was during the time periods implicated in the case *sub judice.*

**9.** All inpatient hospital services rates are set by § 2807-c except for services provided to patients covered by Medicare. *See* 42 U.S.C. §§ 1395-1395ccc.

**10.** Paragraph (a) of subdivision one of section 2807-c provides:

(a) Payments to general hospitals for reimbursement of inpatient hospital services provided to patients eligible for payments made by state governmental agencies; or provided in accordance with policies written by corporations organized and operating in accordance with article forty-three of the insurance law, or payment by such a corporation on behalf of subscribers of a foreign corporation as described in paragraph (d) of subdivision twelve of this section, which provide for reimbursement on an expense incurred basis; or provided to subscribers of organizations operating in accordance with the provisions of article forty-four of this chapter, shall be case based payments per discharge, for each diagnosis-related group established in accordance with paragraph (a) of subdivision three of this section, and shall include:

(i) a reimbursable inpatient operating cost component determined in accordance with subdivision five of this section;

first category of insurers. *See id.;* N.Y. Ins. Law §§ 4301–4325 ("Article 43").

Commercial insurers, motor vehicle insurers, self-insured funds which directly reimburse hospitals, workers compensation insurers, and certain other specified insurers reimburse hospitals at the DRG Rate plus a 13% surcharge. § 2807–c(1)(b).[11] The insurers in this second category qualify for a 2%

> (ii) capital related inpatient expenses determined in accordance with subdivision eight of this section,
> (iii) a bad debt and charity care allowance determined in accordance with subdivision fourteen of this section, a primary health care services allowance determined in accordance with subdivision fourteen-b of this section and a bad debt and charity care allowance for financially distressed hospitals in accordance with subdivision fourteen-c of this section;
> (iv) a projection of reimbursable inpatient operating costs to the rate year by the trend factor determined in accordance with subdivision ten of this section; and
> (v) adjustments for any modifications to the case payments determined in accordance with paragraph (a), (b), (c) or (d) of subdivision four of this section.
>
> N.Y. Pub. Health Law § 2807–c(1)(a) (McKinney 1993).

11. Paragraph (b) of subdivision one provides:

> (b) Payments to general hospitals for reimbursement of inpatient hospital services provided to patients eligible for payments pursuant to the workers' compensation law, the volunteer firefighters' benefit law, the volunteer ambulance workers' benefit law or the comprehensive motor vehicle insurance reparations act; or enrolled in a self-insured fund which provides for reimbursement directly to general hospitals on an expense incurred basis, with the exception of those enrollees covered under a payment rate methodology agreement in accordance with the provisions of paragraph (a) of subdivision two of this section; or insured under a commercial insurer licensed to do business in this state and authorized to write accident and health insurance and whose policy provides inpatient hospital coverage on an expense incurred basis shall be case based payments per discharge, for each diagnosis-related group established in accordance with paragraph (a) of subdivision three of this section, and equal to the case payments to general hospitals provided in accordance with paragraph (a) of this subdivision for services provided to subscribers of corporations organized and operating in accordance with article forty-three of the insurance law, adjusted for uncovered services, and increased by thirteen percent and adjusted in accordance with paragraph (i) of subdi-

discount when paying the full hospital bill within ten days. § 2807–c(11)(e).[12]

Finally, charge-based payors, that is, a payor not delineated in either of the first two categories, such as uninsureds and self-insured funds which do not directly pay the hospitals, must pay based upon the hospital's actual charge up to a maximum of 120% of the "commercial insurers" rate. § 2807–c(1)(c).[13] The maximum for these payors is

> vision eleven of this section. Without due cause general hospitals shall not refuse to accept direct payments from a payor who would otherwise be eligible to reimburse hospitals for inpatient services on a case based payment per discharge in accordance with this subdivision. A payor included in the payor categories specified in this paragraph or in paragraph (a) of this subdivision shall not be provided the option of payment to a general hospital for inpatient services based on the lower of hospital charges or the case based payment per discharge determined in accordance with this section for a patient or apportioning the appropriate case based payment per discharge for a patient by excluding payment for a preexisting condition or acquired condition which has to be treated along with the reason for the admission.
>
> N.Y. Pub. Health Law § 2807–c(1)(b) (McKinney 1993). Paragraph (i) of subdivision eleven supplements the payments made by commercial insurers by an additional eleven percent, for a total surcharge of twenty-four percent, only for patients discharged between April 1, 1992 and March 31, 1993.

12. Paragraph (e) of subdivision eleven states:

> (e) A two percent discount from general hospital payments shall be available to all payors whose payments are calculated in accordance with paragraphs (b) and (c) of subdivision one of this section making payment in full to a general hospital for covered hospital services within ten calendar days of receipt from the hospital by the appropriate payor of a bill for such services.
>
> N.Y. Pub. Health Law § 2807–c(11)(e) (McKinney 1993).

13. Paragraph (c) of subdivision one provides:

> (c) Charge based payments. Payments to general hospitals for reimbursement of inpatient hospital services provided to those for whom a case based payment per discharge system is not authorized by paragraph (a) or (b) of this subdivision, or who are not covered under the provisions of paragraph (a) of subdivision two of this section, shall be on the basis of the hospital's charges; provided, however, for these patients the definition of a short stay patient pursuant to paragraph (d) of subdivision four of this section shall apply, and reim-

therefore 135.6% of the DRG Rate.[14]

For patients other than charge-based payors, a patient's coinsurance liability must be determined by multiplying the coinsurance percentage by the hospital's charges (except in limited circumstances not applicable here), while determining the insurer's coinsurance liability by multiplying the coinsurance percentage by the payment rate set in subdivision one, paragraph (a) or (b). § 2807–c(11)(n)(i).[15]

### 3. The Contract and the Explanation of Benefits Form

■ Blue Cross is correct, therefore, in that the New York law requires the participant's coinsurance to be based upon the hospital charge, while Blue Cross's coinsurance is based upon the DRG Rate. The Contract clearly and unambiguously defines coinsurance for medical/professional services other than inpatient hospital services. However, the Contract contains no definition of the participant's coinsurance for inpatient hospital services. To the extent that a participant's coinsurance is determined by multi-

plying the coinsurance percentage by some undisclosed amount, Blue Cross has violated ERISA.[16] See 29 U.S.C. § 1022(a)(1)(plan description must be provided, and it must be "sufficiently accurate and comprehensive to reasonably apprise participants . . . of their rights and obligations").

Blue Cross urges that the EOB cures the deficiency. Assuming, arguendo, that the EOB constitutes part of the plan description required by § 1022(a)(1), the EOB does not inform the participant that the participant's coinsurance is calculated based upon the "Total Charges," i.e., the billed amount, rather than the "Allowed Charges," i.e., the DRG Rate. The only way a participant could tell from the EOB that the coinsurance percentages were applied to different amounts would be to perform the appropriate algebraic calculations.

Moreover, the Contract misleads participants by failing to restrict its definition of coinsurance to make clear that coinsurance for inpatient hospital services is calculated differently than other coinsurance. The in-

---

bursement to hospitals for such patients shall be at payments developed in accordance with paragraph (d) of subdivision four of this section, increased by thirteen percent. The maximum amount to be charged to any charge paying patient for a case shall be one hundred twenty percent of the case based payment per discharge as determined under paragraph (b) of this subdivision for the diagnosis-related group with which the patient is identified without adjustment in accordance with paragraph (i) of subdivision eleven of this section. Each general hospital shall establish a charge schedule and inpatient charges from this schedule shall be applied uniformly for all inpatient charge based payments made in accordance with this section. N.Y. Pub. Health Law § 2807–c(1)(c)(McKinney 1993).

14. This amount is derived by taking 120% of the sum of the DRG Rate plus 13% of the DRG Rate.

15. For patients discharged on or after August 1, 1988,

and covered by a payor included in the payor categories specified in paragraph (a) or (b) of subdivision one of this section that provides for a percentage coinsurance responsibility by or on behalf of such patient for covered hospital services: (A) the dollar value of such percentage coinsurance responsibility by or on behalf of such patient shall be determined by multi-

plying such coinsurance percentage by the hospital's charges for such patient, determined in accordance with paragraph (c) of subdivision one of this section or paragraph (e) of subdivision four of this section for a general hospital or distinct unit of a general hospital not reimbursed on case based payments, for the services covered by the payor, considering any applicable deductibles, and (B) the payment due to a general hospital for reimbursement of inpatient hospital services by such payor shall be determined by multiplying the payment rate determined in accordance with this section for such patient for covered hospital services by the coinsurance percentage for which such payor is responsible, considering any applicable deductibles. N.Y. Pub. Health § 2807–c(11)(n)(i) (McKinney 1993). Subdivision four paragraph (e) is inapplicable to this case. Subdivision eleven subparagraph (n)(ii) provides that a patient covered by a payor specified in subdivision one paragraph (a) or (b) is deemed liable for the payment rate as set forth in those paragraphs, and that the patient's coinsurance liability is satisfied by payment of the amount calculated as set forth in subparagraph (n)(i)(A).

16. It is not necessary to make a finding that the Contract was ambiguous in order to conclude that Blue Cross violated ERISA by failing to adequately set forth the participant's rights and obligations.

patient hospitalization section of the Contract does not cure this defect, because it fails to apprise the participant of the amount used to calculate the participant's coinsurance. Stating that Blue Cross pays 80% of a certain amount leads the participant to understand that the participant's coinsurance will be based upon that same amount.

This constitutes a misrepresentation for two reasons. First, all other coinsurance, for Blue Cross and the participant, is calculated by multiplying each percentage by the same amount. Second, when percentages totaling 100 percent are used, any reasonably intelligent person would assume that the percentages are being taken of the same amount, and the percentage is being used to reflect proportions of that amount.[17] If percentages are taken of different amounts, then the numbers do not reflect true proportions of the whole.[18] Blue Cross also misrepresents the DRG Rate as the Allowed Amount, by

placing the DRG Rate in the "Allowed Charges" column on the EOB, the same column in which Allowed Amounts are placed for any other covered services.

### 4. Maximum Permitted Hospital Charges

■ Again, Blue Cross correctly points out that New York law requires a participant's coinsurance to be calculated based upon the hospital's charges. See § 2807–c(11)(n). However, Blue Cross fails to point out that § 2807–c also sets the maximum amount a hospital which has contracted with Blue Cross may charge Blue Cross participants for inpatient and outpatient hospital services. The maximum charge in those circumstances is the DRG Rate, the same amount upon which Blue Cross calculates its coinsurance for reimbursement. § 2807–c(12).[19] Hospitals are also prohibited from

---

17. Percentage is defined as "a given part or amount in every hundred." Webster's New World Dictionary 1002 (Victoria Neufeldt & David B. Guralnik eds., 3d college ed., 1988). Thus, 20% of fifteen apples is three apples, and 80% of fifteen apples is twelve apples.

18. Another illustration, again starting with fifteen apples, demonstrates how the percentages reflect proportions of the whole. Twenty percent of fifteen apples equals three apples, but 80% of only ten apples equals eight apples. The total is now only eleven apples (3 + 8) and not fifteen. The percentages are thus altered, with 20% increased to 27% (3 of 11), and 80% reduced to 73% (8 of 11).

In this way Blue Cross has misled participants into believing that they were paying 20% while Blue Cross was paying 80%, when in fact Blue Cross was paying some lesser percentage.

19. Except in circumstances inapplicable in this case, this subdivision provides that for insurers such as Blue Cross

general hospital charges for inpatient and outpatient services to subscribers or beneficiaries of contracts entered into pursuant to the provisions of article forty-three of the insurance law or to members of a comprehensive health services plan operating pursuant to the provisions of article forty-four of this chapter for patient services rendered shall not exceed the rates of payment approved by the commissioner for payments by such article forty-three insurance law corporations or article forty-four organizations. No general hospital may demand or request any charge for such covered services in addition to the charges or rates authorized by this article.

N.Y. Pub. Health Law § 2807–c(12) (McKinney 1993)(emphasis added).

Undoubtedly the rates for Blue Cross participants are set up this way so that if the hospital's actual charges are less than the DRG rate, the participant's coinsurance liability will be based upon the lower amount. This is the same manner in which charge-based payors, such as patients who are uninsured, are protected from a potentially higher case based payment. See e.g., United Health Servs., Inc. v. Upstate Admin. Servs., Inc., 151 Misc.2d 783, 573 N.Y.S.2d 851 (N.Y.Sup.Ct.1991). In United Health, the insurer was a charge-based payor. Id. at 788, 573 N.Y.S.2d 851. The hospital's charges for services to the participant were $1,779.46. Id. at 785, 573 N.Y.S.2d 851. However, the hospital billed $5,829.78, the commercial insurer's rate pursuant to § 2807–c(1)(b). Id. The facts of United Health illustrate the potential disparity between case-based reimbursements based upon DRGs and the actual charges for the services.

This interpretation is also supported by the provision in § 2807–c(1)(b) which precludes paragraph (a) or (b) payors from choosing to pay based upon the "the lower of hospital charges or the case based payment per discharge determined in accordance with this section." This provision clearly contemplates the possibility that actual charges may be less than DRG Rate based payments. By requiring these payors to reimburse based upon the DRG Rate formulas and not some lower amount, the law fulfills one of its purposes—to control costs while keeping coverage available for less insurable New Yorkers. See Cuomo Brief at *16 n. 11, *31–32.

The Contract provisions for member and nonmember hospitals also coincide with the coinsur-

demanding or requesting any amount above and beyond Blue Cross's reimbursement rate, the DRG Rate. *Id.* Thus, to the extent that Blue Cross interprets the coinsurance provisions of the Contract to permit charges above the maximum set by New York state law, that interpretation is arbitrary and capricious. *See Jordan,* 46 F.3d at 1271.

Because Blue Cross and St. Lukes have a contract, St. Lukes' charges for plaintiff's inpatient hospitalization could not exceed the DRG Rate, $3,708.78. Not only did Blue Cross fail to notify St. Lukes that it was making an impermissibly high charge over and above the DRG Rate to a Blue Cross participant, Blue Cross calculated plaintiff's coinsurance based upon that impermissibly high amount, $4,101.54.[20]

As administrator of the Plan, Blue Cross failed to discharge its obligations solely in the interest of the participants by permitting St. Lukes to charge the impermissibly high amount. Similarly, Blue Cross breached its fiduciary duties by failing to protect its participants from St. Lukes' overcharges and by failing to even notice the overcharges. *Cf. Monson v. Century Mfg. Co.,* 739 F.2d 1293, 1303 (8th Cir.1984) (failure to remedy misrepresentation made plan participants constitutes breach of fiduciary duty under ERISA); *Canale v. Yegen,* 782 F.Supp. 963, 968–69 (D.N.J.1992)(failure to protect plan's assets from further dissipation constitutes breach of fiduciary duty); *Successor Trust Comm. v. First State Bank,* 735 F.Supp. 708, 715 (W.D.Tex.1990)(failure to liquidate prohibited transactions breach of fiduciary duty); *Chambers v. Kaleidoscope, Inc. Profit Sharing Plan & Trust,* 650 F.Supp. 359, 377 (N.D.Ga.1986) (trustee breaches fiduciary duties by failing to assure that the ERISA

plan received money contributed by the company).

## IV. CONCLUSION

Blue Cross's lack of damages, exhaustion of administrative remedies, and statute of limitations arguments are meritless. The Contract is clear and unambiguous to the extent that it sets forth the method of calculation of its coinsurance responsibility for inpatient hospital services. However, the Contract fails to delineate the methodology for calculating the participant's coinsurance for inpatient hospital services, thereby violating ERISA's requirement for full disclosure of rights and obligations. Further, Blue Cross breached its fiduciary duties under ERISA by failing to dispute St. Lukes' charges, which exceeded the maximum permitted by New York law. There being no material facts in dispute, plaintiff is entitled to judgment as a matter of law on the issue of liability. Plaintiff is further entitled to the declaratory and injunctive relief sought, as specified below.

Accordingly it is

ORDERED that

1. Plaintiff's motion for partial summary judgment is GRANTED;

2. Defendant's cross-motion for summary judgment is DENIED;

3. Defendant breached its fiduciary duty to plaintiff;

4. Defendant is enjoined from calculating participants' coinsurance liability for inpatient hospital services except in compliance with New York Public Health Law § 2807–c, as set forth herein;

---

ance provisions of § 2807–c. If the hospital is a member hospital, the participant is liable for coinsurance based upon the lower of the hospital charges or the DRG Rate. However, for a nonmember hospital, the participant's coinsurance may be based upon up to 135.6% of the DRG Rate pursuant to § 2807–c(1)(c). Moreover, in that case the participant would be required to pay 100% of the difference between the DRG Rate and the hospital charge (up to 135.6% of the DRG Rate).

**20.** Interestingly, the amount billed by St. Lukes is very close to the amount which would be

reimbursable by commercial insurers pursuant to § 2807–c(1)(b) if prompt payment were made. The commercial insurers reimbursement rate would be the DRG Rate, $3,708.78, plus 13% of $3,708.78 ($482.14), for a total of $4,190.92. Subtracting 2% of $4,190.92 ($83.20) for the prompt payment discount would result in a net billing amount of $4,107.72, surprisingly close to the amount billed by St. Lukes. The small variation could be a result of rounding. The chances seem infinitesimal that St. Lukes actual charges for the hospital stay were so close to the commercial insurers reimbursement rate.

5. Defendant shall notify all participants of the correct method to be used for calculating coinsurance for inpatient hospital services, *see* 29 U.S.C. § 1022(a)(1);

6. Plaintiff may file and serve an application for certification of the class on or before December 15, 1997, *see* Fed.R.Civ.P. 23; L.R. 7.1;

7. The plaintiff's claims for compensatory damages, an accounting, formation of a constructive trust, attorneys fees, and costs are reserved subject to further proceedings.

IT IS SO ORDERED.