[605 NYS2d 488]

Leslie Childs et al., Appellants, et al., Plaintiff, v Mary Jo Bane, as Commissioner of the New York State Department of Social Services, Respondent, et al., Defendants.

Third Department, December 16, 1993

APPEARANCES OF COUNSEL

*Jere B. Fletcher* of counsel, Albany *(B. Robert Piller* and *Gerald Norlander* with him on the brief), for Leslie Childs and another, appellants.

*John W. Keib,* Syracuse *(William C. Grossman* of counsel), for Niagara Mohawk Power Corporation, appellant.

*Robert Abrams, Attorney-General,* Albany *(John McConnell* and *Peter H. Schiff* of counsel), for respondent.

**OPINION OF THE COURT**

WHITE, J.

A resident of this State who is faced with a shut-off of utility services may, if eligible, have his utility bills paid for a limited time by the county social services department in order to prevent a shut-off or to restore service (Social Services Law § 131-s). In 1992, the Legislature amended Social Services Law § 131-s to require persons whose household income exceeds the public assistance standard of need to sign an agreement to repay the assistance within one year as a condition to receiving assistance (L 1992, ch 41, § 128). The Legislature directed defendant State Commissioner of Social Services (hereinafter Commissioner) to promulgate emergency regulations to implement the statutory amendment (L 1992, ch 41, § 165 [p]).

Pursuant to this directive, the Commissioner promulgated an emergency amendment to 18 NYCRR 352.5 (d) and issued Administrative Directive 92 ADM-26. The amendment to 18 NYCRR 352.5 (d) states that assistance cannot be provided to an applicant whose gross household income exceeds the public assistance standard of need for the same sized household unless he or she signs a repayment agreement. It further states that an applicant who is in default on a repayment agreement is not eligible for subsequent assistance.

After this amended regulation went into effect, plaintiffs mounted this multipronged attack against it and 92 ADM-26. Thereafter, both sides moved for summary judgment. Supreme Court found that plaintiff Niagara Mohawk Power Corporation lacked standing but granted it *amicus curiae* status. It then proceeded to deny plaintiffs' motion, grant the Commissioner's cross motion and declare 18 NYCRR 352.5 (d) and 92 ADM-26 valid, enforceable and consistent with the Legisla-

ture's directive contained in Laws of 1992 (ch 41, § 128). This appeal ensued.*

■ The first issue we must resolve is whether Niagara Mohawk has standing. Under State Finance Law § 123-b, a citizen taxpayer has standing to bring an action for declaratory relief to prevent the "wrongful expenditure, misappropriation * * * or any other illegal or unconstitutional disbursement of state funds". Although the promulgation of the amended regulation and 92 ADM-26 did not involve the expenditure of State funds, their implementation will. Inasmuch as Niagara Mohawk alleges that the expenditure of these funds will result in an unconstitutional disbursement and misapplication of State funds, we find it has standing to maintain this action (see, Community Serv. Socy. v Cuomo, 167 AD2d 168).

■ One of the prongs of plaintiffs' attack is predicated upon NY Constitution, article XVII, § 1, which declares that the "aid, care and support of the needy are public concerns and shall be provided by the state". Plaintiffs maintain that the amended regulation runs afoul of this provision because the denial of assistance to an applicant who has not complied with a repayment agreement constitutes a blanket elimination of benefits to persons in need of aid (see, Tucker v Toia, 43 NY2d 1, 9).

We find this argument unpersuasive for two reasons. First, while the Legislature may not refuse to aid the needy, it does have discretion in determining the amount of aid, in classifying recipients and in defining the term "needy" (see, Lovelace v Gross, 80 NY2d 419, 424). Here, the denial of benefits only applies to persons who do not fall within the statutory definition of needy because their household income exceeds the public assistance standard of need and, therefore, are not eligible to receive public assistance. Second, the record shows that when a person's income diminishes to the point where he or she becomes entitled to public assistance, he or she may apply for and receive it even though they may have defaulted upon a previously executed repayment agreement. Accordingly, we find no violation of NY Constitution, article XVII, § 1. We find plaintiffs' contention that the amended regulation denies them the equal protection of law similarly unpersuasive because Social Services Law § 131-s and 18 NYCRR 352.5

---

* All of the plaintiffs except plaintiff Yvonne Castro have appealed. Future references to plaintiffs will therefore exclude Castro.

(d) further the State's legitimate goal of allocating limited public assistance resources to the neediest applicants *(see, Matter of Jones v Blum,* 101 AD2d 330, *affd* 64 NY2d 918).

■ It is a fundamental principle of administrative law that agencies can only exercise those powers expressly delegated by the Legislature, together with those required by necessary implication *(see, Matter of Beer Garden v New York State Liq. Auth.,* 79 NY2d 266, 276). Plaintiffs maintain that the amended regulation and 92 ADM-26 violate this principle because they create eligibility requirements and restrictions that exceed the statutory authority of Social Services Law § 131-s. They first contend that the denial of subsequent assistance to persons who have not complied with a repayment agreement is not authorized by Social Services Law § 131-s, which provides that repayment agreements are to be enforced through conventional creditors' remedies. In our view, the Commissioner's power to deny assistance is derived by implication from the statutory requirement which conditions the receipt of assistance upon the signing of a repayment agreement. Without the power to deny assistance, the repayment agreement would be rendered essentially meaningless as it could be ignored with impunity because the failure to abide by it would have no immediate consequences.

■ Plaintiffs next argue that the Commissioner impermissibly expanded the number of applicants required to sign repayment agreements by her amendment of the definition of "household" and "standard of need". Whether this argument has validity depends upon whether the construction given Social Services Law § 131-s by the Commissioner is rational *(see, Matter of Bates v Toia,* 45 NY2d 460, 464). As amended, 18 NYCRR 352.5 (d) defines a household as consisting of all persons who occupy a housing unit, including related family members and all unrelated persons. We find this definition rational as it is in accord with the commonly understood meaning of "household" (Webster's Third New International Dictionary 1096 [unabridged 1981 ed]).

Eligibility for public assistance is determined by measuring the countable income and resources of an individual or family against the State's defined standard of need which is its view of the amount necessary to provide for the essential needs of a hypothetical family having the same composition as the family in question *(see, Lovelace v Gross, supra,* at 422). A person becomes eligible for public assistance when his or her income is below the standard of need (Social Services Law § 131-a).

The methodology for ascertaining standard of need is set forth in Social Services Law § 131-a and 18 NYCRR 352.1. The statute requires that certain regular recurring monthly needs must be included in the determination of standard of need. These items are set forth in 18 NYCRR 352.1 (a) and (b). The statute further provides that several special nonrecurring items of need may be considered. These items appear in 18 NYCRR 352.1 (c).

In promulgating the amendment to 18 NYCRR 352.5 (d), the Commissioner defined standard of need as including the items set forth in 18 NYCRR 352.1 (a) and (b) but not those contained in 18 NYCRR 352.1 (c). This effectively reduced the standard of need, thereby generating costs savings by increasing the number of applicants who will have to sign repayment agreements.

Plaintiffs' argument that the Legislature could not have intended such a result is belied by Laws of 1992 (ch 41, § 165 [p]), wherein the Commissioner was given the authority to promulgate any regulation, including those provisions relating to the determination of client eligibility by social services districts to meet emergency circumstances. Therefore, because the Legislature clearly envisioned a narrowing of the eligibility standards as a means of achieving savings, we find the definition of standard of need promulgated by the Commissioner to be reasonable.

We do note, however, that one item in 18 NYCRR 352.1 (c), namely, the additional costs of meals for persons unable to prepare meals at home, is specifically required by Social Services Law § 131-a (2) (b) to be included in the determination of standard of need. Because the Commissioner cannot ignore this statutory mandate (see, Matter of Beer Garden v New York State Liq. Auth., supra, at 277), 18 NYCRR 352.5 (d) is invalid to the extent it excludes the additional costs of meals for persons unable to prepare meals at home from the definition of standard of need.

While Social Services Law § 131-s requires persons whose household income exceeds the standard of need to sign repayment agreements, 18 NYCRR 352.5 (d) imposes the obligation upon persons whose gross household income exceeds the standard of need. At the same time the Legislature amended Social Services Law § 131-s, it added Social Services Law § 131-w (L 1992, ch 41, § 129). This statute requires persons facing eviction or foreclosure to sign repayment agreements

and, unlike Social Services Law § 131-s, specifically mandates a gross household income standard. When different terms are used in various parts of a statute, it is reasonable to assume that a distinction between them is intended *(see, Matter of Albano v Kirby*, 36 NY2d 526). While the language at issue is not in the same statute, the two statutes are in pari materia and thus must be read together *(see, Matter of Plato's Cave Corp. v State Liq. Auth.*, 68 NY2d 791, 793). Accordingly, we conclude that the Legislature intended to use income and not gross income in determining eligibility under Social Services Law § 131-s. Hence, 18 NYCRR 352.5 (d) is invalid insofar as it employs a gross household income standard.

■ The mechanisms to enforce the repayment agreements are contained in 92 ADM-26. Among those provided are recoupment from public assistance grants and garnishment of the wages of household members which the Commissioner has limited to the wages of the recipient's spouse. As to recoupment from public assistance grants, the record indicates that the Commissioner has retroactively revised 92 ADM-26 so that recoupment will not be sought from applicants who subsequently become eligible for public assistance.

The authority for enforcing repayment agreements is found in Social Services Law § 131-s, which states that they may be enforced in any manner available to a creditor. A creditor's right to garnish wages is found in CPLR 5231, which provides that an income execution may be issued when the judgment debtor is receiving or will receive money from any source. Unless the spouse has signed the repayment agreement, he or she cannot be considered a debtor because a debtor-creditor relationship would not have been created between that person and the social services department. Nor can such spouse be considered a "garnishee" because a spouse's wages are not a debt owed to the recipient nor are they property in which the recipient has an interest (CPLR 105 [i]). Consequently, we find this provision of 92 ADM-26 to be invalid.

■ Lastly, plaintiffs' contention that 92 ADM-26 and the repayment agreement had to be published in the State Register is without merit because they constitute forms and instructions, interpretive statements and statements of general policy that are merely explanatory and have no legal effect *(see, Matter of Abreu v Coughlin*, 161 AD2d 844; *see also*, State Administrative Procedure Act § 102 [2] [b] [iv]).

WEISS, P. J., YESAWICH JR., CREW III and CASEY, JJ., concur.

Ordered that the order and judgment is modified, on the law, without costs, by reversing so much thereof as denied standing to plaintiff Niagara Mohawk Power Corporation and declared that 18 NYCRR 352.5 (d) and Administrative Directive 92 ADM-26 are valid; it is declared that (1) said regulation is invalid to the extent it requires standard of need to be determined upon gross income rather than income and excludes the costs of meals for persons unable to prepare meals at home from the determination of standard of need, and (2) said directive is invalid to the extent that it permits the garnishment of the wages of the spouse of a recipient; and, as so modified, affirmed.