In the Matter of LASHINS ARCADE Co. et al., Respondents, v THOMAS C. JORLING, as Commissioner of the New York State Department of Environmental Conservation, Appellant. [634 NYS2d 138] —In a proceeding pursuant to CPLR article 78 to review a determination of the Commissioner of the New York State Department of Environmental Conservation, dated February 26, 1992, which, in effect, directed the petitioners to begin remediation of contaminated groundwater without affording them an opportunity for a hearing pursuant to ECL 27-1313 (4), the Commissioner appeals from a judgment of the Supreme Court, Westchester County (Cowhey, J.), entered October 18, 1993, which granted the petition and annulled the determination.

Ordered that the judgment is affirmed, without costs or disbursements.

In 1978, the Westchester County Department of Health determined that groundwater in the area of property owned by the petitioner Lashins Arcade Co. (hereinafter Lashins) in the Town of Bedford, known as the Shopping Arcade, was contaminated. It is alleged that groundwater is the sole source of water supply to the residents of the area. Testing conducted by the State's Department of Environmental Conservation (hereinafter the DEC) and the United States Environmental Protection Agency (hereinafter the EPA) also confirmed the presence of contaminants in the groundwater. The contamination was allegedly caused by solvents used in a dry cleaning business that had been operated by the petitioner Rocco Tripodi on the property. The dry cleaning establishment ceased operations in 1972. Lashins purchased the property in 1987.

Between 1982 and 1991, the DEC conducted investigations which indicated that the level of contamination was decreasing and that the plume of contamination was not migrating. In February 1992, the Commissioner of the DEC (hereinafter the appellant), made "Findings of Fact", pursuant to which he sought to impose a remedial program without first holding an

administrative hearing. It is the Findings of Fact which is the subject of this proceeding.

While ECL 27-1313 (3) (b) provides the appellant with this power, it can be exercised only under specified circumstances. ECL 27-1313 (1) provides, in pertinent part, that the DEC "shall be responsible, as provided in this section, for inactive hazardous waste disposal site remedial programs". ECL 27-1313 (3) (a) then provides, in relevant part, as follows: "Whenever the commissioner finds that hazardous wastes at an inactive hazardous waste disposal site constitute a significant threat to the environment, he may order the owner of such site and/or any person responsible for the disposal of hazardous wastes at such site (i) to develop an inactive hazardous waste disposal site remedial program, subject to the approval of the department, at such site, and (ii) to implement such program within reasonable time limits specified in the order".

However, ECL 27-1313 (4) specifically prohibits the appellant from issuing an order without affording potentially responsible parties an opportunity to be heard. Notwithstanding that prohibition, the statute authorizes the appellant to act without a hearing under certain specified circumstances where the inactive hazardous waste disposal site constitutes a significant threat to the environment. Thus, ECL 27-1313 (3) (b) provides in full as follows:

"b. Whenever the commissioner, after investigation, finds:

"(i) that hazardous wastes in an inactive hazardous waste disposal site constitutes a significant threat to the environment; and

"(ii) that such threat is causing or presents an imminent danger of causing irreversible or irreparable damage to the environment; and

"(iii) the threat makes it prejudicial to the public interest to delay action until a hearing can be held pursuant to this title, the department may, pursuant to paragraph c of subdivision five of this section and within the funds available to the department, develop and implement an inactive hazardous waste disposal site remedial program for such site. Findings required pursuant to this paragraph shall be in writing and may be made by the commissioner on an ex parte basis subject to judicial review."

The appellant's Findings of Fact was purportedly issued pursuant to this subdivision. However, in issuing the Findings of Fact, the appellant failed to satisfy regulations which he promulgated for the purpose of implementing the procedures

set forth in ECL 27-1313, to wit, 6 NYCRR part 375. Under the regulations (filed Apr. 20, 1992, and becoming effective 30 days thereafter), "[t]he mere presence of hazardous waste at a site or in the environment is not a sufficient basis for a finding that hazardous waste disposed at a site constitutes a significant threat to the environment" (6 NYCRR 375-1.4 [c]). The regulations set forth factors which must exist before the appellant may make a finding that the presence of hazardous waste at a site constitutes a "significant threat" to the environment (see, 6 NYCRR 375-1.4 [d], [e]). The appellant's regulations further provide: "In making a finding ECL 27-1313.3.b (iii) [sic] that the significant threat to the environment posed by hazardous waste disposed at a site makes it prejudicial to the public interest to delay action until a proceeding can be held pursuant to ECL article 27, title 13, the commissioner must determine either that further environmental damage reasonably is anticipated to result during such a hearing; or that, if environmental damage has not yet occurred, such reasonably is anticipated to occur during the pendency of the proceeding" (6 NYCRR 375-1.4 [f]).

Here, the record fails to support the conclusion that further environmental damage reasonably is anticipated to result during the period necessary to hold a hearing. The investigations sponsored by the DEC showed that while environmental damage had already occurred, there was no potential for further damage. A DEC internal memorandum, dated December 17, 1991, indicated that a comparison of analysis of samples taken "[d]uring the recently completed remedial design field investigation" with "previous data" indicated "a trend * * * of a decline in concentrations of contaminants, especially in samples taken from the on-site monitoring wells".

Moreover, the deposition testimony of the DEC official in charge of the Shopping Arcade site indicated that the DEC had concluded that the overall level of groundwater contamination in the Shopping Arcade area is decreasing and that the plume of contamination is not migrating. Against this background, the appellant's conclusion that the "threat * * * makes it prejudicial to the public interest to delay action until a * * * hearing can be held", as defined by his own regulations, lacks a reasonable basis.

Additionally, in assessing the relative priority of the need for action (see, ECL 27-1305 [4] [b]), the DEC classified the Shopping Arcade site as Class 2, rather than Class 1. Areas designated as Class 1 are those sites "[c]ausing or presenting an imminent danger of causing irreversible or irreparable dam-

age to the public health or environment", and for which "immediate action [is] required". (ECL 27-1305 [4] [b] [1].) Areas designated Class 2 are those sites which pose a "[s]ignificant threat to the public health or environment", and for which "action [is] required". (ECL 27-1305 [4] [b] [2].) The language defining a Class 1 site is identical to the language used in ECL 27-1313 (3) (b) (ii). "Where the same word or group of words is used in different parts of the same statute there is a presumption that the Legislature intended to convey the same conception each time; and in the absence of anything indicating a contrary intention the same meaning will be attached to the similar expressions" (McKinney's Cons Laws of NY, Book 1, Statutes § 236; *see also, Matter of Albano v Kirby*, 36 NY2d 526).

Applying this principle of statutory construction, it is clear that the Legislature never intended that the appellant exercise the extraordinary power granted him under ECL 27-1313 (3) (b) under circumstances where the DEC has found it fit to designate the subject inactive hazardous waste disposal site as Class 2. Thompson, J. P., Joy and Florio, JJ., concur.

Goldstein, J., dissents and votes to reverse the judgment appealed from, on the law, and to dismiss the proceeding, with the following memorandum: Groundwater in the Town of Bedford has been contaminated by certain organic carcinogenic chemicals, affecting wells which provide drinking water. Groundwater is the sole source of potable water supply for residents of the Town of Bedford. The source of the contamination was apparently a dry-cleaning establishment which vacated the premises now owned by the petitioner Lashins Arcade Co. in 1972. The appellant's engineers ascertained that "although it appears that the levels of groundwater contamination have been generally declining" there was "no clear trend of declining contamination for all wells", because contaminated soil continued to release organic chemicals into the environment.

In the determination under review, the appellant found, pursuant to ECL 27-1313 (3) (b), that the hazardous waste at the site required immediate action and implementation of a remedial program, which would include establishing an alternative water supply for affected residents, with "funds available to the department" (ECL 27-1313 [3] [b] [iii]).

In the judgment appealed from, the Supreme Court, Westchester County, set aside that determination as arbitrary and capricious because (1) remedial actions had been taken, including installation of water filters, and the "impending" acquisi-

tion of a new water supply partially with funds provided by the New York State Department of Environmental Conservation (hereinafter the DEC), (2) the problem was long-standing, so there was no "urgency", and (3) the site was designated Class 2, defined in 6 NYCRR 375-1.8 (a) (2) (ii) as a site which poses a significant threat to the environment rather than Class 1, defined as a site which poses a significant threat to the environment and is causing, or presents an imminent danger of causing either reversible or irreparable damage to the environment (6 NYCRR 375-1.8 [a] [2] [i]).

ECL 27-1313 (3) (b) authorizes the Commissioner of the DEC to act ex parte whenever he finds "after investigation" that "hazardous wastes at an inactive hazardous waste disposal site constitutes a significant threat to the environment", the "threat is causing or presents an imminent danger of causing irreversible or irreparable damage to the environment", and it is "prejudicial to the public interest to delay action until a hearing can be held". The legislative history of those provisions indicate the Legislature intended to give the Commissioner "[b]road powers * * * to respond to situations which significantly threaten public health or environmental degradation" with State funds (1982 Legis Ann, at 273).

The determination under review can only be set aside as arbitrary and capricious if it is devoid of a rational basis *(see, Flacke v Onondaga Landfill Sys.,* 69 NY2d 355, 363; *State Off. of Drug Abuse Servs. v State Human Rights Appeal Bd.,* 48 NY2d 276, 284). Here the long-standing contamination of drinking water constituted a rational basis for the appellant's action.

In the instant case, although filters have been installed on the affected wells, contaminants are still above acceptable levels. Indeed, the Supreme Court noted that the "[p]etitioners concede there is contamination" present. An alternative water supply has been proposed, but the parties acknowledged at oral argument that that proposal has yet to be implemented.

The DEC represents that the very purpose of its determination was to earmark DEC funds for acquiring an alternative water supply. Therefore, setting aside the DEC's determination because an alternative water supply has been proposed is pure sophistry.

The thrust of the petitioners' contentions are that the environmental damage has already occurred, therefore there is no need for immediate action. In support of that contention, they cite 6 NYCRR 375-1.4 (f), which states that when finding that it is "prejudicial to the public interest to delay action"

until a hearing is held, the Commissioner must determine that "further environmental damage reasonably is anticipated to result during such a hearing; or that, if environmental damage has not yet occurred, such reasonably is anticipated to occur during the pendency of the proceeding". The majority accepts the petitioners' contention that the determination must be set aside because "in issuing the Findings of Fact, the respondent failed to satisfy" the regulations set forth at 6 NYCRR part 375. However, the majority acknowledges those regulations were filed April 20, 1992, and became effective 30 days thereafter. This was subsequent to the determination under review, dated February 26, 1992. Therefore, the Commissioner's failure to make findings pursuant to those regulations is not a ground to set aside the determination.

In any case, the appellant's finding that "the exposure to site contaminants by human receptors is high and would result in a significant public health threat", because contamination of drinking water would continue satisfied that criteria. "Human receptors" are just as much a part of the environment as plants and wildlife. The fact that the problem is longstanding is an aggravating factor, which only underscores the danger to the public.

The fact that the site in question was classified a Class 2 site is not determinative. According to the appellant, the DEC's policy was to classify sites requiring the most urgent attention as Class 2, and it had never classified a site Class 1. The DEC should be afforded considerable deference in interpreting its classification scheme (see, Flacke v Onondaga Landfill Sys., 69 NY2d 355, supra, at 363; Matter of Board of Educ. v New York State Div. of Human Rights, 56 NY2d 257, 261). In any event, if the DEC erroneously classified the subject site as Class 2 rather than Class 1, the remedy is to reclassify the site Class 1, not set aside the determination under review.

The DEC's failure to reclassify the site, and its failure to act sooner, should not estop it from acting now. It is well settled that " '[e]stoppel may not be invoked against a governmental agency to prevent it from discharging its statutory duties' " (State of New York v Ferro, 189 AD2d 1018, 1020, quoting Matter of E.F.S. Ventures Corp. v Foster, 71 NY2d 359, 369). The decision to set aside the DEC's determination places the burden of the DEC's failure to act earlier squarely on the public, and those individuals who must continue to drink contaminated water, contrary to the clear intent of the Legislature.