Thomas CAVALLO, Plaintiff,

v.

UTICA–WATERTOWN HEALTH INSURANCE COMPANY, INC., f/k/a Blue Cross and Blue Shield of Utica–Watertown, Inc., Defendant.

No. 96–CV–933.

United States District Court, N.D. New York.

April 30, 1998.

Getnick Livingston Atkinson Gigliotti & Priore, LLP, Utica, NY (Louis P. Gigliotti, of Counsel), Dyer Donnelly & Lilley, Denver, CO (F. James Donnelly, of Counsel), Hagens & Berman, Seattle, WA (Steve W. Berman, of Counsel), Clifford A. Cantor, Redmond, WA, for Plaintiff.

Hinman, Straub, Pigors & Manning, P.C., Albany, NY (Beverly Cohen, Bartley J. Costello, III, of Counsel), for Defendant.

### MEMORANDUM–DECISION and ORDER

HURD, United States Magistrate Judge.

## I. INTRODUCTION

Plaintiff initiated this lawsuit on his own behalf and on behalf of all others similarly situated, pursuant to the Employee Retirement Income Security Act, as amended ("ERISA"), 29 U.S.C. §§ 1001–1461. Partial summary judgment was granted in favor of the plaintiff on the issue of liability and he was granted a permanent injunction. *See Cavallo v. Utica–Watertown Health Ins. Co.*, 985 F.Supp. 72 (N.D.N.Y.1997). His claims for compensatory damages, an accounting, formation of a constructive trust, attorneys fees, and costs were reserved pending further proceedings. *Id.* Familiarity with the prior decision, *id.*, is assumed.

Defendant Utica–Watertown Health Insurance Company, Inc. ("Blue Cross" or "defendant") currently seeks reconsideration of the decision granting partial summary judgment pursuant to Local Rule 7.1(g) and alteration or amendment of that judgment pursuant to Federal Rule of Civil Procedure 59. Plaintiff has moved for class certification pursuant to Federal Rule of Civil Procedure 23. Oral argument on these motions was held on February 12, 1998, in Utica, New York, and decision was reserved.

On December 2, 1997, defendant filed an appeal of the prior decision, 985 F.Supp. 72, to the Court of Appeals for the Second Circuit. The appeal was withdrawn by stipulation of the parties, without prejudice to reinstate within thirty days of issuance of a

Decision and Order in the pending motion for reconsideration. (*See* Mandate, Docket No. 57.)

## II. DISCUSSION

### A. Reconsideration

Defendant argues that the finding that it breached its fiduciary duty under ERISA and the resultant grant of partial summary judgment in favor of plaintiff was based upon an erroneous interpretation of the New York Prospective Hospital Reimbursement Methodology ("NYPHRM"), N.Y. Pub. Health Law § 2807–c.[1] The interpretation at issue is the finding that the hospital charges to a patient-Blue Cross subscriber cannot exceed the case based payment per discharge for the applicable diagnosis related group ("DRG Rate") upon which Blue Cross's payment to the hospital is based. This specific point of NYPHRM interpretation was not previously briefed by the parties. In the interest of justice, therefore, that interpretation will be reconsidered taking into consideration the briefing of the parties in order to determine if alteration or amendment of the judgment is appropriate.

### B. Alteration or Amendment of Judgment

█ Alteration or amendment of a prior decision is warranted only where controlling law has changed, new evidence is available, and/or clear error must be corrected or manifest injustice prevented. *Bartz v. Agway, Inc.,* 849 F.Supp. 166, 167 (N.D.N.Y.1994) (citations omitted). In this case, Blue Cross argues that it was clear error to interpret

NYPHRM as limiting plaintiff's hospital charges to the DRG Rate. Blue Cross further argues that this interpretation provided the underpinning for the grant of partial summary judgment.[2] Finally, Blue Cross argues that absent bad faith or gross negligence it should not be found to have breached ERISA. Plaintiff argues in opposition that the statute language is clear and unambiguous, and that any interpretation contrary to the clear language can not properly be based upon "subsequent legislative history."

### 1. NYPHRM Interpretation

A brief iteration of NYPHRM sets the analytic context. NYPHRM sets the rates at which hospitals are paid for services, in an effort to control costs. Brief for Petitioners Mario M. Cuomo, et al., 1994 WL 646144, at \*2–3, *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). The rates are determined, in relevant part, by the category into which the payor falls. *Id.,* at \*4–5. Cost savings to hospitals and positive social policy outcomes justify the differential in the rates among the payor categories. *Id.,* at \*3. Blue Cross falls within the category of payors whose payments to hospitals for inpatient services is based upon the DRG Rate.[3] § 2807–c(1)(a). So-called commercial payors reimburse hospitals at the DRG Rate plus 13% ("Commercial Rate"). § 2807–c(1)(b). Charge-based payors reimburse hospitals based upon the actual hospital charges, which cannot exceed 120% of the Commercial Rate. § 2807–c(1)(c). Actual hospital charges may

---

1. All references to § 2807–c are to the statute as it appeared at the time relevant to this lawsuit, unless otherwise specified.

2. Partial summary judgment was based upon Blue Cross's failure to comply with ERISA. 985 F.Supp. at 82. Blue Cross violated ERISA by 1) failing to fully disclose the subscriber's rights and obligations regarding inpatient hospital services, and 2) breaching its fiduciary duties by failing to dispute hospital charges which exceeded the DRG Rate. *Id.*

3. This category includes state governmental agencies and corporations organized under articles forty-three of the insurance law and forty-

four of the public health law. Blue Cross is an article forty-three corporation. Generally Health Maintenance Organizations ("HMO") are article forty-four corporations. For simplification in this opinion, article forty-three corporations will be referenced as "Blue Cross" and article forty-four corporations will be referenced as "HMOs". Thus, for example, the paraphrase for the statutory language "subscribers or beneficiaries of contracts entered into pursuant to the provisions of article forty-three of the insurance law or to members of a comprehensive health services plan operating pursuant to the provisions of article forty-four of this chapter" will be "Blue Cross and HMO subscribers."

be more or less than the DRG Rate. *See* 985 F.Supp. at 81 n. 19.

When NYPHRM was initially promulgated, DRG Rate payors such as Blue Cross, Commercial Rate payors, and both payors' subscribers paid coinsurance based upon the rates set by § 2807–c(1)(a)–(b). Subscribers complained, however, because they could not pay based upon actual hospital charges when those charges were less than the DRG-based rate. (*See* Gahan Aff. at ¶ 4; Laks Aff. at ¶ 9–10.) NYPHRM now requires a patient's coinsurance to be calculated based upon the hospital's charges, N.Y. Pub. Health Law § 2807–c(11)(n), but does not permit payors in the DRG Rate and the Commercial Rate categories to pay based upon hospital charges if that amount is lower than the rate calculated based upon the DRG, § 2807–c(1)(b). Moreover, hospital charges are limited to 120% of the Commercial Rate, in order to protect subscribers from price-gouging by hospitals. (*See* Gahan Aff. at ¶ 4; Fitzgerald Aff. at ¶ 6–8; Laks Aff. at ¶ 12–13.)

 It was previously found that § 2807–c(12)[4] further limits hospital charges for Blue Cross and HMOs to the DRG Rate. *See* 985 F.Supp. at 81; *supra* note 3. Defendant argues that "hospital charges" referred to in § 2807–c(12) has no bearing on the "hospital charges" referred to in § 2807–c(11). Defendant supports this argument with two points. First, it suggests that if subdivision 12 requires "hospital charges" to be capped at the DRG Rate, then the cap for hospital charges of 120% of the Commercial Rate set by subdivision 11 would be meaningless. Accordingly, "hospital charges," as used in subdivision 12, must mean something other than the amount charged by the hospital for services, upon which the subscriber's coinsurance is based. Defendant asserts that this interpretation reflects the "clear language of the statute." Second, defendant states that subdivision 12 embodies a "rate mandate" precluding hospitals from balance-billing[5] Blue Cross subscribers, but in no way affects the amount upon which a subscriber's coinsurance is based.

Resolution of defendant's argument thus depends upon the meaning given to "hospital charges" as used in subdivision 11, and "hospital charges" in subdivision 12. Defendant's argument that "hospital charges" has one meaning in subdivision 11 and another, different, meaning in subdivision 12 must be rejected as contrary to the plain meaning of the statute.

Interpretation of a statute begins with a literal reading of its words, as an indication

---

4. Section 2807–c(12) provides:

> Provisions for article forty-three insurance law corporations and article forty-four of this chapter organizations. Except as provided in paragraphs (a) and (b) of this subdivision, general hospital charges for inpatient and outpatient services to subscribers or beneficiaries of contracts entered into pursuant to the provisions of article forty-three of the insurance law or to members of a comprehensive health services plan operating pursuant to the provisions of article forty-four of this chapter for patient services rendered shall not exceed the rates of payment approved by the commissioner for payments by such article forty-three insurance law corporations or article forty-four organizations. No general hospital may demand or request any charge for such covered services in addition to the charges or rates authorized by this article.

N.Y. Pub. Health Law § 2807–c(12).

5. "Balance billing" refers to health care providers' practice of billing a patient for the amount above which the insurer allows as a basis for its reimbursement. For example, prior to NYPHRM, an insurer could contract with a hospital to provided services at a certain cost, commonly referred to as the allowed amount. The insurer would then pay it's percentage of that amount and the patient would pay the remaining percentage. In this manner the hospital would be reimbursed for 100% of the allowed amount.

In the early 1970's, reimbursement formulas were set by state statute to control increasing costs to Blue Cross-type insurers. *See People v. Woman's Christian Ass'n of Jamestown, Inc.*, 44 N.Y.2d 466, 469–70, 406 N.Y.S.2d 272, 377 N.E.2d 725 (1978). When the reimbursement rates were not raised, hospitals canceled the contracts and began billing the patients for the difference between the Blue Cross reimbursement rate and the higher prevailing rate. *See id.* at 470, 406 N.Y.S.2d 272, 377 N.E.2d 725 (upholding practice of unaffiliated hospitals billing patients for balance of charge not reimbursed; statute limited amount of insurer's reimbursement, but not insured's). According to defendant, the precursor to subdivision 12 was enacted to directly limit the amount which hospital's were permitted to bill Blue Cross-type subscribers. (*See* Laks Aff. ¶ 15.)

of the intent of the legislature. N.Y. Statutory Construction Law § 92(b) (McKinney's 1971);[6] *Landreth Timber Co. v. Landreth,* 471 U.S. 681, 685, 105 S.Ct. 2297, 85 L.Ed.2d 692 (1985); *C–TC 9th Avenue Partnership v. Norton Co.,* 113 F.3d 1304, 1308 n. 2 (2d Cir.1997); *United States v. Collado,* 106 F.3d 1097, 1101 (2d Cir.1997); *Albano v. Kirby,* 36 N.Y.2d 526, 529–30, 369 N.Y.S.2d 655, 330 N.E.2d 615 (1975). "Where the words of a statute are free from ambiguity and express plainly, clearly and distinctly the legislative intent," no further rules of construction need be utilized, as the interpretation is complete. N.Y. Statutory Construction Law § 76; *Collado,* 106 F.3d at 1101.

Subdivision 11 provides that a Blue Cross subscriber's coinsurance amount "shall be determined by multiplying such coinsurance percentage by the hospital's charges for such patient." § 2807–c(11)(n)(i). There is no dispute that as used in subdivision 11 "hospital's charges" refers to the amount which a hospital is paid when a case based payment per discharge reimbursement is not authorized by § 2807–c(1)(a) or (b). *See* § 2807–c(1)(c). This meaning is consonant with the natural, ordinary meaning which would be attributed to the phrase "hospital's charges"—the amount which a hospital would expect as a fee for its services (absent a price-setting statute such as NYPHRM). *See* N.Y. Statutory Construction Law §§ 94, 232; *Webster's II New College Dictionary* 188 (Margery S. Berube, et al. eds., 1995). Further, there is nothing to indicate that this meaning is contrary to the legislative intent.

The "hospital's charge" is the amount upon which a charge-based payor's or subscriber's payment to a hospital is based, pursuant to § 2807–c(1)(c). This is also the amount upon which DRG Rate-payors' and Commercial-rate payors' subscribers' coinsurance liability is based, pursuant to subdivision 11, although the insurance companies pay their coinsurance based upon the case based payment per discharge amount as set forth in § 2807–c(1)(a)–(b). Thus, subscribers' liability will be less if the hospital's charges are less than

the applicable case based payment per discharge.

Subdivision 12 provides, inter alia, that "general hospital charges for inpatient and outpatient services" to Blue Cross and HMO subscribers "shall not exceed the rates of payment approved by the commissioner for payments by" Blue Cross and HMOs. § 2807–c(12); *see supra* note 4 (text of subdivision 12). "Rates of payment approved by the commissioner for payments by Blue Cross and HMOs" plainly means the DRG Rate, which is the amount upon which Blue Cross's and HMOs' payments to the hospitals are based, as determined in accordance with § 2807–c(1)(a). Imparting the plain meaning as set forth above to "hospital charges" as used in subdivision 12 results in limiting the amount upon which the subscribers' coinsurance liability is determined to the DRG Rate. In other words, hospital charges to Blue Cross and HMO subscribers shall not exceed the DRG Rate. This being the plain, literal, unambiguous interpretation of the statute, no further construction is necessary.

Moreover, even if further interpretation were needed, the same result would be reached. Of particular import is the presumption that where the same terms are used in different parts of a statute, the terms will be given the same meaning throughout. N.Y. Statutory Construction Law § 236; *National Credit Union Admin. v. First Nat'l Bank & Trust Co.,* —— U.S. ——, 118 S.Ct. 927, 939, 140 L.Ed.2d 1 (1998)(interpreting Federal Credit Union Act); *Gustafson v. Alloyd Co.,* 513 U.S. 561, 570, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995)(Securities Act); *Ratzlaf v. United States,* 510 U.S. 135, 143, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994)(criminal code); *C.I.R. v. Keystone Consol. Indus., Inc.,* 508 U.S. 152, 159, 113 S.Ct. 2006, 124 L.Ed.2d 71 (1993)(tax code); *Matimak Trading Co. v. Khalily,* 118 F.3d 76, 83 (2d Cir.1997)(jurisdictional statute), *cert. denied,* —— U.S. ——, 118 S.Ct. 883, 139 L.Ed.2d 871 (1998); *United States v. Hopkins,* 53 F.3d 533, 541 (2d Cir.1995)(criminal code), *cert. denied,* 516 U.S. 1072, 116 S.Ct. 773, 133 L.Ed.2d 725 (1996); *In re Associated Gas & Elec. Co.,* 11

**6.** Notably, neither party to this litigation cited as authority the New York State Statutory Construction Laws, many sections of which are pertinent to this analysis.

F.Supp. 359, 365 (N.D.N.Y.1935) (bankruptcy statute); *Lashins Arcade Co. v. Jorling*, 221 A.D.2d 533, 536, 634 N.Y.S.2d 138 (2d Dep't 1995)(state environmental conservation law); *Laing v. City of New York*, 133 A.D.2d 339, 340, 519 N.Y.S.2d 238 (2d Dep't 1987)(city administrative code), *aff'd*, 71 N.Y.2d 912, 528 N.Y.S.2d 530, 523 N.E.2d 816 (1988); *see also United States v. Yip*, 930 F.2d 142, 148 (2d Cir.)(different terms presumed to have different meanings), *cert. denied*, 502 U.S. 868, 112 S.Ct. 197, 116 L.Ed.2d 157 (1991); *Albano*, 36 N.Y.2d at 530, 369 N.Y.S.2d 655, 330 N.E.2d 615 (same); *Childs v. Bane*, 194 A.D.2d 221, 228, 605 N.Y.S.2d 488 (3d Dep't 1993)(same); *Felt v. Felt*, 93 A.D.2d 396, 398, 461 N.Y.S.2d 835 (1st Dep't 1983)(same), *aff'd*, 62 N.Y.2d 691, 476 N.Y.S.2d 537, 465 N.E.2d 44 (1984). Thus, "hospital charges" is presumed to have the same meaning, and refer to the same amount, in subdivision 11 and subdivision 12.

There is nothing unreasonable or absurd about "hospital charges" referring to the same amount in both subdivisions 11 and 12. *See* N.Y. Statutory Construction Law §§ 143, 145. This interpretation does not work a hardship or injustice upon subscribers. *See id.* § 146. It does, in fact, provide a benefit to the public. *See id.* § 341. Since there is no obvious mistake in the legislation, its plain language will not be changed in order to conform to a supposed intent. *See id.* §§ 73, 362.

Defendant does not suggest an alternate meaning for "hospital charges," but insists that it does not relate to the subscribers' coinsurance amount. (*See, e.g.*, Gahan Aff. ¶ 5) ("the term 'hospital's charges' as used in § 2807-c(11)(n) is not meant to be the same amount referred to in § 2807-c(12)".) Defendant implicitly indicates that the provision at issue in subdivision 12 represents a payment limitation for purposes of calculating the Blue Cross (not the subscriber's) coinsurance amount. (*See* Jeffers Aff. ¶ 5.) However, the plain language of the provision is not susceptible to that interpretation.[7] Moreover, the limit placed upon Blue Cross coinsurance amounts is set explicitly to the DRG Rate in § 2807-c(1)(a), so that the same limitation in subdivision 12 would be superfluous, an interpretation to be avoided. *See* N.Y. Statutory Construction Law § 231; *Albano*, 36 N.Y.2d at 530, 369 N.Y.S.2d 655, 330 N.E.2d 615; *New York Life Ins. Co. v. State Tax Comm'n*, 80 A.D.2d 675, 676, 436 N.Y.S.2d 380, *aff'd*, 55 N.Y.2d 758, 447 N.Y.S.2d 245, 431 N.E.2d 970 (1981).

Contrary to defendant's argument, the cap on hospital charges of 120% of the Commercial Rate set by subdivision 11 is not meaningless when subdivision 12 is interpreted to limit the amount of coinsurance paid by Blue Cross and HMO subscribers. Subdivision 11 includes two categories of payors, DRG Rate-payors and Commercial Rate-payors, which are covered by § 2807-c(1)(a)-(b). The DRG Rate-payors include Blue Cross, HMOs, and state governmental agencies.[8]

---

7. Clearly the amount upon which Blue Cross's coinsurance is determined is the case based payment per discharge calculated pursuant to § 2807-c(1)(a), the DRG Rate. Thus, following defendant's theory, "hospital charges" as used in subdivision 12 would mean the DRG Rate (the case based payment per discharge). To interpret "hospital charges" to mean the DRG Rate would be completely contrary to the plain meaning of these terms. The legislature must have intended "hospital charges" to mean a different amount than the DRG Rate. *See Yip*, 930 F.2d at 148; *Albano*, 36 N.Y.2d at 530, 369 N.Y.S.2d 655, 330 N.E.2d 615; *Childs*, 194 A.D.2d at 228, 605 N.Y.S.2d 488; *Felt*, 93 A.D.2d at 398, 461 N.Y.S.2d 835. Moreover, by its repeated references to case based payment per discharge (DRG Rate) throughout § 2807-c, the legislature is presumed to have acknowledged and accepted that phrase's meaning, and would not use some other terminology in its place in only one subdivision

of this long and protracted legislation. *See* N.Y. Statutory Construction Law § 231; *cf. id.* § 193 (different phraseology in amendment deemed a change in law). Finally, subdivision 12 refers to "charges or rates," indicating the legislature's understanding that "charges" and "rates" refer to two different amounts. *See* § 2807-c(12).

8. Paragraph (a) of subdivision one of section 2807-c provides:

(a) Payments to general hospitals for reimbursement of inpatient hospital services provided to patients eligible for payments made by state governmental agencies; or provided in accordance with policies written by corporations organized and operating in accordance with article forty-three of the insurance law, or payment by such a corporation on behalf of subscribers of a foreign corporation as described in paragraph (d) of subdivision twelve of this section, which provide for reimburse-

Commercial Rate-payors include workers' compensation insurers; volunteer firefighters' benefit insurers; volunteer ambulance workers' benefit insurers; comprehensive motor vehicle insurance reparations act insurers; self-insured funds which provide for reimbursement directly to general hospitals on an expense incurred basis, with the exception of those with enrollees covered under a payment rate methodology agreement in accordance with the provisions of paragraph (a) of subdivision two of section 2807–c; and commercial insurers licensed to do business in New York state and authorized to write accident and health insurance and whose policies provide inpatient hospital coverage on an expense incurred basis.[9] Thus, while subdivision 11 generally provides a limit of 120% of the Commercial Rate for all DRG Rate-

and Commercial Rate-payors' subscribers, subdivision 12 particularly applies only Blue Cross- and HMO-payors' subscribers, who benefit by a lower limit, the DRG Rate. *See* N.Y. Statutory Construction Law § 238. This leaves the subdivision 11 limit in place for subscribers whose benefits are paid by state governmental agencies; workers' compensation insurers; volunteer firefighters' benefit insurers; volunteer ambulance workers' benefit insurers; comprehensive motor vehicle insurance reparations act insurers; self-insured funds which provide for reimbursement directly to general hospitals on an expense incurred basis, with the exception of those with enrollees covered under a payment rate methodology agreement in accordance with the provisions of paragraph (a) of subdivision two of section 2807–c; and com-

> ment on an expense incurred basis; or provided to subscribers of organizations operating in accordance with the provisions of article forty-four of this chapter, shall be case based payments per discharge, for each diagnosis-related group established in accordance with paragraph (a) of subdivision three of this section, and shall include:
> (i) a reimbursable inpatient operating cost component determined in accordance with subdivision five of this section;
> (ii) capital related inpatient expenses determined in accordance with subdivision eight of this section,
> (iii) a bad debt and charity care allowance determined in accordance with subdivision fourteen of this section, a primary health care services allowance determined in accordance with subdivision fourteen-b of this section and a bad debt and charity care allowance for financially distressed hospitals in accordance with subdivision fourteen-c of this section;
> (iv) a projection of reimbursable inpatient operating costs to the rate year by the trend factor determined in accordance with subdivision ten of this section; and
> (v) adjustments for any modifications to the case payments determined in accordance with paragraph (a), (b), (c) or (d) of subdivision four of this section.
>
> N.Y. Pub. Health Law § 2807–c(1)(a).

9. Paragraph (b) of subdivision one provides:

> (b) Payments to general hospitals for reimbursement of inpatient hospital services provided to patients eligible for payments pursuant to the workers' compensation law, the volunteer firefighters' benefit law, the volunteer ambulance workers' benefit law or the comprehensive motor vehicle insurance reparations act; or enrolled in a self-insured fund which provides for reimbursement directly to

> general hospitals on an expense incurred basis, with the exception of those enrollees covered under a payment rate methodology agreement in accordance with the provisions of paragraph (a) of subdivision two of this section; or insured under a commercial insurer licensed to do business in this state and authorized to write accident and health insurance and whose policy provides inpatient hospital coverage on an expense incurred basis shall be case based payments per discharge, for each diagnosis-related group established in accordance with paragraph (a) of subdivision three of this section, and equal to the case payments to general hospitals provided in accordance with paragraph (a) of this subdivision for services provided to subscribers of corporations organized and operating in accordance with article forty-three of the insurance law, adjusted for uncovered services, and increased by thirteen percent and adjusted in accordance with paragraph (i) of subdivision eleven of this section. Without due cause general hospitals shall not refuse to accept direct payments from a payor who would otherwise be eligible to reimburse hospitals for inpatient services on a case based payment per discharge in accordance with this subdivision. A payor included in the payor categories specified in this paragraph or in paragraph (a) of this subdivision shall not be provided the option of payment to a general hospital for inpatient services based on the lower of hospital charges or the case based payment per discharge determined in accordance with this section for a patient or apportioning the appropriate case based payment per discharge for a patient by excluding payment for a preexisting condition or acquired condition which has to be treated along with the reason for the admission.
>
> N.Y. Pub. Health Law § 2807–c(1)(b).

mercial insurers licensed to do business in New York state and authorized to write accident and health insurance and whose policies provide inpatient hospital coverage on an expense incurred basis. Defendant's first point, that subdivision 11 is rendered meaningless if "hospital charges" means the same amount when used in subdivision 11 and subdivision 12, is not well taken.

Defendant's second point in support of its argument is that subdivision 12 embodies a rate mandate which prevents hospitals from balance billing patients for amounts higher than those set by NYPHRM. Defendant argues that this agency interpretation should receive deference. The last sentence of subdivision 12 certainly reflects a proscription on charging amounts above those prescribed by NYPHRM: "No general hospital may demand or request any charge for such covered services in addition to the charges or rates authorized by this article." *See* § 2807–c(12). Taken in context with the previous sentence, which limits hospital charges for Blue Cross subscribers to the DRG Rate, the last sentence provides an additional protection for the subscriber. That is, when the hospital charges are less than the DRG Rate, the hospital cannot bill the subscriber for the difference between the amount paid (by the subscriber and Blue Cross) and the DRG Rate. In other words, the last sentence of subdivision 12 prohibits balance billing by the hospital, the interpretation which Blue Cross espouses. Also, to the extent that any agency interprets "hospital charges," as used in subdivisions 11 and 12, to mean two different amounts, such interpretation must be rejected. N.Y. Statutory Construction Law § 129(b); *New York Life Ins. Co.,* 80 A.D.2d at 676, 436 N.Y.S.2d 380; *supra* note 7.

█ Defendant argues that subdivision 12 has never been interpreted as placing a limit on the amount upon which a Blue Cross subscriber's coinsurance is based. (*See* Gahan Aff. at ¶ 7; Fitzgerald Aff. at ¶ 10.) Plaintiff objects to the consideration of the opinions proffered in support on the grounds that they constitute "subsequent legislative history." Post-enactment views of those involved with the legislation should not be considered. *See Sullivan v. Finkelstein,* 496 U.S. 617, 631–32, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990)(Scalia, J., concurring in part)(discussing attempts to "smuggle into judicial consideration" subsequent legislative history); *Occidental Chemical Corp. v. Power Auth. of New York,* 786 F.Supp. 316, 329 (W.D.N.Y.1992), *aff'd,* 990 F.2d 726 (2d Cir.), *cert. denied,* 510 U.S. 947, 114 S.Ct. 388, 126 L.Ed.2d 337 (1993); *Walsh v. Brady,* 927 F.2d 1229, 1233 n. 2 (D.C.Cir.1991); *McKechnie v. Ortiz,* 132 A.D.2d 472, 475, 518 N.Y.S.2d 134 (1st Dep't 1987), *appeal dismissed,* 71 N.Y.2d 873, 527 N.Y.S.2d 761, 522 N.E.2d 1059, *and order aff'd,* 72 N.Y.2d 969, 534 N.Y.S.2d 358, 530 N.E.2d 1278 (1988); *Daniel C. (Anonymous) v. C. (Anonymous),* 99 A.D.2d 35, 41, 472 N.Y.S.2d 666 (2d Dep't 1984); *Civil Serv. Employees Ass'n Inc. v. County of Oneida,* 78 A.D.2d 1004, 1005, 433 N.Y.S.2d 907 (4th Dep't 1980). Even if such views are considered, they will not override the plain meaning of a statute. *General Media Communications, Inc. v. Cohen,* 131 F.3d 273, 283 n. 13 (2d Cir.1997), *petition for cert. filed,* (Mar. 16, 1998)(No. 97–1535). Accordingly, any weight given to the post-enactment statements submitted in support of this motion is insufficient to merit anything more than a cursory affirmance that the plain meaning of the statute must control. Moreover, any agency manuals, et cetera, would be given the same deference as any agency interpretation. Since the agency interpretation of subdivision 12 is contrary to its plain language, it is not entitled to deference. *See* N.Y. Statutory Construction Law § 129(b) ("Courts should not blindly follow" administrative interpretation "where the statute is unambiguous."); *New York Life Ins. Co.,* 80 A.D.2d at 676, 436 N.Y.S.2d 380.

Based upon the foregoing, the prior interpretation that subdivision 12 limits the amount upon which plaintiff's coinsurance is based to the DRG Rate is not clear error. Accordingly, alteration or amendment of the prior partial judgment is unwarranted.

### 2. ERISA Violation

Having found that the prior interpretation of NYPHRM was not erroneous, no grounds exist for altering or amending the prior find-

ings that Blue Cross violated its fiduciary duties under ERISA.

Defendant's ERISA violation was based upon its failure to disclose the true method by which subscribers' coinsurance liability for inpatient hospital services was computed, misleading subscribers about that method, and its failure to dispute hospital charges which exceeded the DRG Rate, the maximum permitted by NYPHRM. Defendant argues essentially a "good faith defense:" (1) its interpretation of the coinsurance terms reflected what it believed was required under state law, (2) the plan documents provided that defendant's interpretation and construction of plan terms was discretionary, (3) when plans provide for such deferential interpretation and construction a denial of benefits is reversed only when the court finds it to be arbitrary and capricious, and (4) its conduct was not blatantly fraudulent or in bad faith, therefore no ERISA violation occurred. Extending this argument in its reply, defendant contends that the omission in the plan documents was immaterial in that it did not cause plaintiff harm, and that therefore no ERISA violation occurred.

This is essentially the same argument rejected previously in determining whether plaintiff was required to exhaust administrative remedies. *See* 985 F.Supp. at 75–76. That is, to the extent that defendant's arguments relate to a denial of benefits, those arguments are inapplicable to this claim for violation of ERISA, which does not seek payment of denied benefits. Additionally, the case law cited by defendant does not reflect a change in the controlling law which would warrant alteration or amendment of the prior judgment. However, two segments of defendant's arguments warrant discussion.

First, defendant's argument that its omission in the plan description must have resulted in a substantive harm to plaintiff in order to find defendant's conduct arbitrary is a misstatement of the law. Assume, arguendo, that the appropriate standard of review for benefit denials is deferential because of

appropriate plan language. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Only when an ERISA fiduciary's denial of benefits is arbitrary and capricious will the denial be reversed. *Id.* at 111–12, 109 S.Ct. 948 (discussing standards of review). A corollary to the arbitrary and capricious standard is the requirement that benefits would be due under the plan absent the arbitrary and capricious denial. *See Veilleux v. Atochem North America, Inc.*, 929 F.2d 74, 76 (2d Cir.1991). In other words, if the benefits were not due absent the denial, then the denial does not work a harm and there is no ERISA violation. The arbitrary and capricious standard, therefore, applies to claims for denial of benefits, where the relief sought is payment of the benefits. *See, e.g., id.; James v. New York City District Council of Carpenters' Benefits Funds*, 947 F.Supp. 622, 634 (E.D.N.Y.1996). Again, the plaintiff in this case does not claim a denial of benefits. *Cavallo*, 985 F.Supp. at 76.

Another class of cases arise from claims of failure to comply with ERISA disclosure requirements or violation of fiduciary duties under ERISA, seeking equitable relief or penalties. *See, e.g., Veilleux*, 929 F.2d at 76 (failure to disseminate revised policy "plainly violated" ERISA disclosure requirements); *James*, 947 F.Supp. at 634. In these cases, no showing of prejudice or harm is required to sustain the cause of action. *James*, 947 F.Supp. at 634. Rather, prejudice or harm is a factor to consider when deciding whether to impose penalties. *Id.* at 634–35 (denying summary judgment for determination of whether failure to disclose plan terms occurred in circumstances warranting imposition of penalty). In the instant case plaintiff does not seek penalties.

Defendant has confused these cases with situations in which special circumstances existed, combining and convoluting the facts and law in order to establish some nonexistent standard.[10] For example, in *Gilbert v.*

---

10. Defendant first cites *Firestone Tire & Rubber Co.* for the proposition that the arbitrary and capricious standard applies in this case, in reply to plaintiff's assertion to the contrary. (Def.'s

Reply at 4.) Defendant states that plaintiff's argument "ignores well-established law on this point." *Id.* Defendant apparently overlooked the following statement from the *Firestone Tire &*

*Burlington Indus., Inc.*, 765 F.2d 320, 328–29 (2d Cir.1985), *aff'd*, 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 558 (1986), the fiduciary had an informal severance pay policy. It never attempted to comply with the ERISA disclosure requirements. *Id.* Plaintiffs sued to recover severance pay required by state law, after the fiduciary refused to pay under its policy. *Id.* The fiduciary defended against the state law action on the basis that the claim was preempted by ERISA. *Id.* The court held that review of the fiduciary's denial of benefits must be in context with its non-compliance with ERISA in order to prevent its non-compliance from becoming a shield to protect it from liability. *Id.* Otherwise, non-compliance with ERISA would be rewarded and encouraged. *Id.* Accordingly, the court found that the non-compliance with ERISA, that is nondisclosure of plan terms, could be considered to "work a substantive harm" on plaintiffs such that the denial of benefits could be held to be arbitrary and capricious, thus entitling plaintiffs to recover the benefits. *Id.* In the special facts of *Gilbert*, the fiduciary's non-disclosure was used to circumvent the ERISA preemption which would have shielded it from liability when it clearly should have been liable. *Id.*

In *Veilleux*, the defendant failed to disseminate a revised policy regarding severance pay to participants. 929 F.2d at 76. Further, in the old policy applicable benefit terms were misplaced, in violation of the requirement to reasonably apprise participants of their rights and obligations. *Id.* The defendant's denial of benefits was entitled to deference due to terms of the policy. *Id.* Moreover, a grant of severance pay was discretionary under both policies. *Id.* Plaintiffs made no showing that they would or should have been granted severance pay under either policy. *Id.* Plaintiffs were continuously

employed and were currently covered by a severance policy which took into account time served with defendant in calculating that pay. *Id.* Read in the context of *Gilbert*, upon which the court relied, *Veilleux* stands for the proposition that when plaintiffs have not shown entitlement to benefits under the policy, mere technical violations of disclosure requirements are insufficient to constitute a special harm which would convert a discretionary denial into an arbitrary denial thereby justifying payment of benefits. *Clark v. Bank of New York*, 801 F.Supp. 1182, 1195–96 (S.D.N.Y.1992), upon which the defendant herein also relies, is a situation similar to that in *Veilleux*, and is similarly inapposite.

Defendant also mischaracterizes *James*, 947 F.Supp. at 633, stating: "plaintiff's claim against the ERISA Fund based on a failure to disclose dismissed where the violations were without effect." (Def.'s Reply at 6.) In *James*, several policy provisions were considered in determining whether the denial of plaintiff's benefits was proper. Notably, the court applied a *de novo* standard of review. *Id.* at 627. The section upon which Blue Cross relies begins "James further contends that he is entitled to [the benefit sought] because of the defendants' failure to comply with ERISA's disclosure requirements with regard to the Plan itself." *Id.* at 633. The court found that under other exclusionary provisions of the policy, plaintiff was not entitled to the benefits he sought. *Id.* Accordingly, the terms which were undisclosed had no effect on plaintiff's entitlement to benefits. *Id.* The defendant's failure to disclose those terms did not entitle the plaintiff to benefits to which he is otherwise unentitled. *Id.* However, the *James* Court went on to consider plaintiff's claim for penalties of up to $100 per day, under 29 U.S.C. § 1132(c),[11] for defendant's failure to comply

---

*Rubber Co.* decision: "The discussion which follows *is limited to* the appropriate standard of review in § 1132(a)(1)(B) actions challenging *denial of benefits* based on plan interpretations. We express no view as to the appropriate standard of review for actions under other remedial provisions of ERISA." 489 U.S. at 108, 109 S.Ct. 948 (emphasis added). In fact, defendant cites no binding authority which would support a finding that arbitrary and capricious is the appropriate standard, and that prejudice or harm is a necessary element of a finding under that stan-

dard, in a case claiming breach of fiduciary duties and seeking equitable relief.

11. Section 1132(c) permits assessment of a penalty of up to $100.00 per day for each day that the plan administrator refuses or fails to comply with a participant's request for plan documentation of which ERISA requires disclosure. The plan documentation must be provided within thirty days after the request. 29 U.S.C. § 1132(c). That provision of ERISA is not at issue in this case.

with ERISA's disclosure requirements. *Id.* at 634. The court noted several factors, including bad faith, number of inquiries made, and length of delay in answering inquiries which must be considered in determining whether to assess a fine. *Id.* at 634–35. Summary judgment was denied on the claim for penalties, even without a viable claim for benefits. *Id.*

In summary, a substantive harm is not required to prove a violation of ERISA's disclosure requirements and nondisclosure is not a mere technical violation. Again, the cases cited by defendant which relate to claims for denied benefits are inapposite here because in this case there was no denied benefit. *See, e.g., Jordan v. Federal Express Corp.,* 116 F.3d 1005, 1011 (3d Cir.1997); *Panaras v. Liquid Carbonic Indus. Corp.,* 74 F.3d 786, 789 (7th Cir.1996). Similarly, cases in which plaintiffs sought penalties pursuant to 29 U.S.C. § 1132(c) are distinguishable from the instant case because plaintiff here does not seek those penalties. *See, e.g., Chambers v. European American Bank & Trust Co.,* 601 F.Supp. 630, 638–39 (E.D.N.Y. 1985). Interestingly, in *Jordan,* in addition to dismissing a claim for denial of benefits due to absence of bad faith or other "extraordinary circumstances," the court also considered a claim for breach of a fiduciary duty to inform. 116 F.3d at 1011, 1014. The court refused to dismiss that claim, finding no requirement for bad faith or other bad conduct in fiduciary duty cases. *See id.* at 1014.

Thus, the prior finding that defendant violated ERISA must stand.

### 3. Mootness

The question of mootness is not properly before the court, as reconsideration was granted only as to the prior interpretation of applicable NYPHRM provisions which had not previously been briefed by the parties. However, as a matter of efficiency it will briefly be addressed. Effective January 1, 1997, Blue Cross may negotiate rates with hospitals. *See* § 2807–c(29)(McKinney's Supp.1998). If a rate is negotiated, then both Blue Cross's and the subscriber's coinsurance must be based upon the negotiated rate. However, the other applicable provisions of § 2807–c did not change, and would still apply to any hospital which does not have a rate negotiated with Blue Cross. Therefore, the permanent injunction is not moot. Clearly plaintiff's claims for compensatory damages, an accounting, formation of a constructive trust, attorneys fees, and costs are not moot because each claim derives from the ERISA violation.

### C. Class Certification and Plaintiff's Other Claims

Plaintiff moved for certification of the class pursuant to Federal Rule of Civil Procedure 23. Defendant opposes. In the interest of judicial economy, decision on class certification is reserved pending resolution of the appeal, if reinstated. Likewise, further proceedings regarding compensatory damages, an accounting, formation of a constructive trust, attorneys fees, and costs, should also await an appellate decision, if any.

### III. *CONCLUSION*

Upon consideration of all submissions, alteration or amendment of the judgment is not warranted. Decision on class certification is reserved.

Accordingly, it is

ORDERED, that

1. Defendant's motion for reconsideration pursuant to Local Rule 7.1(g) is GRANTED;

2. Defendant's motion for alteration or amendment of the judgment pursuant to Federal Rule of Civil Procedure 59 is DENIED;

3. Decision is RESERVED on plaintiff's motion for class certification pending resolution of any appeal to the Court of Appeals for the Second Circuit; and

4. Other proceedings are STAYED pending further order of this Court.

IT IS SO ORDERED.