Joseph J. VEILLEUX, Jr., Harley M. Dixon, Dennis L. Strazdins, James V. Hoteling, M. Richard White II, David J. St. Maurice, Robert Ketchmere, Margaret A. Correnti, Rutha Williams, Jane E. Alfieri, Thomas H. Bloodgood, Sandra L. Sizer, Gary L. Cannioto, James Rountree and Joseph M. Farzetta, individually, and on behalf of all others similarly situated, Plaintiffs–Appellants,

v.

ATOCHEM NORTH AMERICA, INC., f.k.a. Pennwalt Corporation, and Edwin E. Tuttle and Anthony Fortino, as fiduciaries of the Pennwalt Pharmaceutical Division Separation Allowance Plan, Defendants–Appellees.

No. 1162, Docket 90–7979.

United States Court of Appeals, Second Circuit.

Argued March 14, 1991.

Decided March 27, 1991.

Warren B. Rosenbaum, Rochester, N.Y. (Shapiro, Rosenbaum & Liebschutz, of counsel) for plaintiffs-appellants.

Eugene D. Ulterino, Rochester, N.Y. (David P. Ford, Nixon, Hargrave, Devans & Doyle, of counsel) for defendants-appellees.

Before PIERCE, NEWMAN and WALKER, Circuit Judges.

PER CURIAM:

Joseph J. Veilleux, Jr. and other named plaintiffs, suing on behalf of a class of just over seven hundred former employees of Pennwalt Corporation, appeal from a October 9, 1990 judgment of the District Court for the Western District of New York (David G. Larimer, *Judge*). On cross-motions for summary judgment the district court dismissed their suit seeking separation benefits allegedly denied in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*

The Veilleux class comprises former employees of the Pharmaceutical Division of Pennwalt Corporation ("the Division"), now known as Atochem North America Inc. On Friday, October 14, 1988, Pennwalt sold the Division to Fisons Corporation. Plaintiffs were offered and accepted positions with Fisons beginning the following Monday, October 17, 1988, performing the same duties, at the same rate of pay, and with similar benefits as their positions with the Division. One of those benefits was a severance pay provision that gave credit to time served as a Pennwalt employee in calculating severance pay from Fisons. Plaintiffs were not given any separation benefits at the time they ceased working for the Division and began working for Fisons.

Prior to January 1, 1988, Pennwalt maintained a Separation Policy for its employees known as Separation Policy 140 ("Policy 140"). Policy 140 was not distributed to every employee, but to fifty-eight Division supervisors, who did not pass on the information unless requested by an employee. The policy laid out a "general rule" that "separation allowance .. *may* be granted" on a scale of two weeks of pay for up to five years of employment and one week per year of employment for those employed five years and over, with a cap of twenty six weeks of severance pay (emphasis added). Under the heading "Leaves of Absence," and after the subsection labelled "Maternity," however, the policy contained the following "Note":

> Persons who leave employment with Pennwalt to continue their employment in a unit sold by Pennwalt are not included in the above definitions of "separations" and are not entitled to the provisions of this policy. Determination of any benefits to which they may be entitled shall be determined by agreement between Pennwalt and acquiring company's representatives as a part of negotiations for the disposition of the unit.

Effective January 1, 1988, Pennwalt replaced Policy 140 with Policy 141, which did away with the schedule of separation benefits per years of service set out in Policy 140, and placed the decision of whether or not to pay separation allowance even more clearly "at the discretion of Company management." Policy 141 also deleted the "Note" from the "Leaves of Absence" section, and added a more prominent provision stating that employees who are offered employment by an acquiring company are not entitled to separation benefits, unless they are terminated from that company within a year. Policy 141 was given to the Division's personnel department but was never distributed or publicized to employees, not even to the fifty-eight supervisors who had copies of the preceding policy.

The Veilleux class argues that Pennwalt violated ERISA disclosure requirements by failing to properly distribute Policy 140 and 141 and by misplacing the "Note" regarding the separation status of employees who accept employment with a

purchasing company under the "Leaves of Absence" section of Policy 140.

In 29 U.S.C. § 1024(b)(1) ERISA requires an employer to furnish "each participant with a copy of the summary plan description." Pennwalt's distribution of its Policy 140—the equivalent of a summary plan description—to supervisors only, and its failure to distribute Policy 141 to any employee plainly violated § 1024(b)(1)'s requirement that every employee receive a description of the plan. 29 U.S.C. § 1022(a)(1) requires that a plan description "shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." The placement of the "Note" regarding the separation status of employees who continue employment in a unit sold by Pennwalt under the heading "Leaves of Absence," and within that section, under the "Maternity" subsection was also an ERISA violation. An employee in a position to accept employment with a purchasing company who wished to learn about the consequences of this action upon her Pennwalt separation benefits would probably not look for such information under this section, unless by coincidence she was or expected to be pregnant. Therefore she would not be "reasonably apprised" of her rights. The misplacement of the note thus violated § 1022(a)(1).

■■■ Where violations of ERISA disclosure provisions work a "substantive harm" on plaintiffs who are denied benefits under the improperly disclosed plan, courts may find that these violations "sufficiently taint [the employer's] denial of severance pay so as to warrant a finding that [the denial] was arbitrary and capricious" and grant the benefits. *See Gilbert v. Burlington Industries, Inc.,* 765 F.2d 320, 328–29 (2d Cir.1985), *aff'd,* 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 558 (1986); *Blau v. Del Monte Corp.,* 748 F.2d 1348, 1354 (9th Cir. 1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985). However, this is not such a case.

Plaintiffs are, and were since the sale, employed by Fisons and are covered there by a separation policy which takes into account time served with Pennwalt in calculating severance pay. More significantly, they have failed to offer any evidence to support their assertion that had they been aware of Pennwalt's severance policy they would have chosen to forgo employment with Fisons and accept the severance pay. In addition, plaintiffs had no assurance that had they decided to turn down the Fisons positions they would have received severance pay upon the termination of their jobs with Pennwalt, because under Policy 140 and Policy 141 payment of severance pay is discretionary with the plan administrator and there is no showing that this discretion would have been exercised in favor of the plaintiffs. Therefore they have demonstrated no cognizable prejudice from Pennwalt's failure to fully comply with ERISA's disclosure requirements, and have not shown, even under the lenient standard of *Gilbert* and *Blau,* that the denial of benefits was arbitrary.

The Veilleux class presents no other viable argument as to why they should be entitled to severance pay benefits. As Judge Larimer noted, employees have no vested right in receiving separation benefits, as an employer has the right to amend or terminate a severance pay plan at any time. *See Reichelt v. Emhart Corp.,* 921 F.2d 425, 430 (2d Cir.1990). Pennwalt chose to deny separation benefits to employees who accepted jobs with a purchasing company and demonstrated this choice in its written policy plan. Aside from disclosure inadequacies, which we have determined to be non-prejudicial in this case, there is no reason this choice should not be honored.

Affirmed.