**Solomon LANGMAN, Plaintiff–Appellant,**

v.

**Emanuel LAUB, James Johnson, Mel Weitz, Harold Friedman, Jon Greenfield, Sam Pelz, Manuel Monaco, Hector Torres, and Sidney Blumgold, trustees of Local 338 Retirement Fund; Retail, Wholesale and Chain Store Food Employees Union Retirement Trust Board of Trustees, Administrator of Local 338 Retirement Fund; and Local 338 Retirement Fund, Defendants–Appellees.**

**Docket No. 02–7457.**

United States Court of Appeals, Second Circuit.

Argued: Jan. 17, 2003.

Decided: May 6, 2003.

Edgar Pauk, New York, N.Y. (Scott Riemer on brief), for Plaintiff–Appellant.

Eugene S. Friedman, Friedman & Wolf, New York, N.Y. (William K. Wolf and Erinn Weeks Waldner on brief), for Defendants–Appellees.

Before: VAN GRAAFEILAND and B.D. PARKER, Circuit Judges, and RAKOFF, District Judge.*

RAKOFF, District Judge.

Plaintiff-appellant Solomon Langman appeals from a judgment of the United States District Court for the Southern District of New York (Miriam Goldman Cedarbaum, *Judge*), granting summary judgment to defendants-appellees. *See Langman v. Laub,* 97 Civ. 6063, 2002 WL 472033 (S.D.N.Y. Mar.28, 2002). Although our interpretation of the applicable law differs somewhat from that of the district court, we agree with its conclusion that plaintiff received all the pension benefits to which he was entitled. Accordingly, we affirm the judgment.

The pertinent facts are undisputed. For many years, Local 338 of the Retail, Wholesale and Chain Store Food Employees Union has maintained, in conjunction with various employers, a pension plan for its retired workers (the "Plan"). At numerous times, the Plan was amended so as

---

* The Honorable Jed S. Rakoff, United States District Court for the Southern District of New York, sitting by designation.

to increase benefits, across-the-board, for all current employees. On four occasions, moreover, the Plan was more generally amended, specifically in 1976, 1981, 1984, and 1994. Since 1974, the Plan has been governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*

From 1953 through 1973, Langman worked at Waldbaum's, Inc. in a position covered by the Plan, but in August 1973 he transferred to a non-covered position at Waldbaum's where he remained until he left Waldbaum's employ in June 1979. Four months later, in October 1979, Langman resumed covered employment with a different employer, and continued in this position until his retirement on May 1, 1996.

Pursuant to Amendment No. 8 to the 1994 Plan, an employee who, like Langman, claims early retirement on or after January 1, 1996 is entitled to receive a monthly pension equal to a benefit rate of $50 multiplied by the number of years of his service in covered employment. How-ever, under Article V, § 7 of the 1994 Plan (the "1994 separation provision") the benefit rate for a claimant who previously "separated from employment"—*i.e.*, who worked fewer than 500 hours in covered employment during an applicable 12–month period—is "pro rated," so that for the portion of his covered service that preceded the separation, he receives only the benefit rate in effect at the time of his separation.[1]

Construing these provisions, defendants initially calculated plaintiff's monthly pension by applying the $50 benefit rate that was in effect at the time Langman retired only to the portion of his employment subsequent to his return to covered service in 1979, and applying to the earlier portion of his covered employment prior to his separation in 1973 the $5 benefit rate that was in effect at the time of his separation. However, after realizing that the pro rata formula for employees who had previously separated was not introduced into the Plan until 1984,[2] and that use of the $5 rate

---

1. Specifically, Article V, § 7 provides in pertinent part:

   An Employee shall be deemed to have separated from employment on the last day in which he receives an Hour of Service which is followed by a Plan Year in which he receives fewer than 500 Hours of Service. If such Employee subsequently returns to employment his pension amount will be determined on a pro rata basis. The amount of pension based on Benefit Service earned before his separation from employment shall be determined under the terms of the Plan on his first separation from employment.

2. Specifically, Article IV, § 6 of the 1984 Plan (the "1984 separation provision") provides:

   In the event of the return to employment as an Employee of a person who was receiving a retirement benefit, or any other person who sustains a One Year Break hereunder, the following provisions shall govern upon his subsequent termination as an Employee:

(a) With respect to his Benefit Service and Vesting Service prior to his reemployment, he shall receive the same pension or prospective pension as before, actuarially reduced to reflect the value of payments, if any, made during his prior period of retirement which were paid prior to his Normal Retirement Age, and

(b) If after his return as an Employee he renders three or more years of Vesting Service, he shall receive an additional benefit based upon the additional number of years of Benefit Service rendered and the benefit level in effect when he subsequently terminates service as an Employee, and

(c) If after his return as an Employee he renders less than three years of Vesting Service, he shall receive an additional benefit based upon the additional number of years of Benefit Service rendered and the benefit level in effect when he first terminated service as an Employee, provided

(d) In no event shall the benefit upon subsequent termination of service be of smaller amount than would be due on account of

would therefore retroactively diminish Langman's benefit in violation of ERISA, defendants increased the benefit rate for the pre-separation period to $20, *i.e.,* the benefit rate in effect when the separation provision was first introduced in 1984.

■ Despite this adjustment, Langman commenced this lawsuit, claiming that he was entitled to the $50 benefit rate for the entire period of his covered employment. By Opinion dated March 28, 2002, the district court denied plaintiff's motion for summary judgment in its entirety, and granted defendants' motion for summary judgment with respect to all claims. On appeal, Langman's primary argument is that defendants' calculation violated ERISA's 133–1/3 percent accrual test set forth in ERISA § 204(b)(1)(B), 29 U.S.C. § 1054(b)(1)(B), which provides that:

A defined benefit plan satisfies the requirements of this paragraph of a particular plan year if under the plan the accrued benefit payable at the normal retirement age is equal to the normal retirement benefit and the annual rate at which any individual who is or could be a participant can accrue the retirement benefits payable at normal retirement age under the plan for any later plan year is not more than 133 1/3 percent of the annual rate at which he can accrue benefits for any plan year beginning on or after such particular plan year and before such later plan year. For purposes of this subparagraph-

(i) any amendment to the plan which is in effect for the current year shall be treated as in effect for all other plan years; [and]

(ii) any change in an accrual rate which does not apply to any individual who is or could be a participant in the current year shall be disregarded[.]

Langman asserts that since the $50 benefit rate used to calculate his pension benefits for the later years is more than 133 1/3 percent of the benefit rate used to calculate his pension benefit for the earlier years, defendants' calculation—and, more generally, the separation provisions on which it is premised—violates the 133 1/3 percent test.

This argument, however, completely misapprehends the acknowledged purpose of the 133 1/3 percent test, which is to prevent the practice known as "backloading of benefits." *Hoover v. Cumberland, Md. Area Teamsters Pension Fund,* 756 F.2d 977, 982 n. 10 (3d Cir.1985). As explained in the House Report on ERISA:

The primary purpose of [minimum accrual rates] is to prevent attempts to defeat the objectives of the minimum vesting provisions by providing undue "backloading," i.e., by providing inordinately low rates of accrual in the employee's early years of service when he is most likely to leave the firm and by concentrating the accrual of benefits in the employee's later years of service when he is most likely to remain with the firm until retirement.

H.R.Rep. No. 93–807 (1974), *reprinted in* 1974 U.S.C.C.A.N. 4639, 4688. In other words, the test applies to how a given plan operates at a given time and prevents it from being unfairly weighted against shorter-term employees; but it is irrelevant to across-the-board increases in benefit rates made at some future time on behalf of all current employees regardless of period of service. Indeed, it would be a strange rule that would prohibit a fund from making more than a one-third in-

---

all his Vesting Service taken together with his Benefit Service rendered after his re-

turn as an Employee.

crease in its across-the-board benefit rate unless that rule were retroactively applied to all former employees; yet this would be the effect of plaintiff's interpretation. Accordingly, we conclude that defendants did not violate the 133 1/3 percent test by pro rating his monthly benefit in accordance with the Plan's separation provisions.

■ Langman's fall-back argument is that, even if such pro rating were otherwise permissible, it should not apply in his case, because he did not in fact suffer the kind of separation that implicates such pro rating, at least prior to 1994. So far as any benefits that vested prior to that time, the relevant separation provision is the 1984 separation provision, which (in language not retained in the 1994 separation provision) defines a separated employee as someone who has sustained a "One Year Break." The "Definitions" section of the 1984 Plan in turn defines a "One Year Break" simply as "any calendar year in which a Participant failed to work more than 500 hours for an Employer." Article I, § 3. But elsewhere, in defining length of service for Plan eligibility and vesting purposes, Article II, § 7 of the 1984 Plan states in pertinent part:

> A Participant's hours of work for the same Employer immediately before the Participant was transferred into the bargaining unit for which that Employer was required to make contributions to the Fund or immediately following transfer from such a bargaining unit shall be counted in determining his Vesting Service and in determining whether or not he had incurred a One Year Break.

If this latter section were applied to the calculation of "One Year Break" as used in the 1984 separation provision, Langman would not have suffered a "One Year Break," since he was transferred from a covered position at Waldbaum's to a non-covered position at the same employer, where he remained for all but four months of the time before he once again obtained a covered position with a different employer.

We conclude, however, that the special refinement of "One Year Break" set forth in Article II, § 7 of the Plan does not apply to "One Year Break" as used elsewhere in the 1984 Plan, for if so it logically would have been included in the general definition of that term found in the Definitions section of the Plan, Article I, § 3. Instead, the special refinement appears only in Article II, § 7, and it was added there for a specific reason: to ensure compliance with a Department of Labor Regulation that provides in pertinent part that "in determining an employee's service for eligibility to participate and vesting purposes, all covered service with an employer or employers maintaining the plan and all contiguous noncovered service with an employer or employers maintaining the plan shall be taken into account." 29 C.F.R. § 2530.210(c)(1). Neither this regulation, nor the language of Article II, § 7 that applies it, has any relevance to the separation provision relating to calculation of the benefit rate, and consequently is irrelevant here.

While Langman makes several other arguments—all of which we have carefully considered, and rejected—the only other one deserving mention is his claim that none of the Summary Plan Descriptions that were made available to employees between 1984 and 1996 informed Plan participants who had previously suffered a separation that they would be subject to a pro rating of their benefit rates. But Langman has failed to show how he was prejudiced by this omission. Indeed, at the time he separated from service, the benefit rate was $5, and under defendants' calculation he received the significantly higher benefit rate of $20 for the pre-

separation period. After he returned, he received all subsequent benefit increases for his post-separation employment. Thus, the failure to inform him of the freeze at no point prejudiced him. *See Veilleux v. Atochem N. Am., Inc.*, 929 F.2d 74, 76 (2d Cir.1991) (denying plaintiffs recovery for a disclosure violation where they suffered no "cognizable prejudice").

Accordingly, for the foregoing reasons, we affirm the district court's grant of summary judgment in favor of defendants.